**Theophilus F. MARANGA and Taj Maran International Corporation, Plaintiffs,**

v.

**Arvind VIRA and Mavi, LLC, Defendants.**

**No. 04 Civ. 09028(LBS).**

United States District Court, S.D. New York.

May 3, 2005.

Victor Essien, New York City, for Plaintiff.

Taj Maran Int'l Corp., Pro se.

## MEMORANDUM AND ORDER

SAND, District Judge.

Plaintiffs Theophilus F. Maranga ("Maranga"), a resident of New York, and Taj Maran International Corporation ("Taj Maran"), a New York corporation with principal place of business in New York of which Maranga is President, bring this diversity action against defendants Arvind Vira ("Vira"), a Louisiana resident, and Mavi, LLC ("Mavi"), purportedly a Louisiana corporation having its principal place of business in Louisiana.[1] Maranga and

---

1. The Complaint, and Vira's affidavit in support of his motion to dismiss the Complaint for lack of personal jurisdiction, *see infra*, both state that Mavi, LLC "is a corporation incorporated under the laws of the State of Louisiana [with] its principal place of busi-

Taj Maran (collectively "Plaintiffs") allege that Vira and Mavi (collectively "Defendants") provided false financial records and committed commercial bribery in connection with their sale to Plaintiffs of the Econo Lodge Motel in Gretna, Louisiana.

Defendants have moved to dismiss the Complaint pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure for lack of personal jurisdiction, or in the alternative to transfer the case to the U.S. District Court for the Eastern District of Louisiana. For the reasons stated below, Defendants' motion to dismiss is granted, rendering Defendants' motion to transfer moot.

## I. Legal Standard

"On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff[s] bear[ ] the burden of showing that the court has jurisdiction over the defendant[s]." *Kernan v. Kurz–Hastings, Inc.*, 175 F.3d 236, 240 (2d Cir.1999); *Metropolitan Life Ins. Co. v. Robertson–Ceco Corp.*, 84 F.3d 560, 566 (2d Cir.1996). The Court in adjudicating such a motion has discretion either to "rely on pleadings and affidavits" or to "hold[ ] an evidentiary hearing," *CutCo Industries, Inc. v. Naughton*, 806 F.2d 361, 364 (2d Cir.1986). "Where, as here, [the][C]ourt relies on pleadings and affidavits, rather than conducting a 'full-blown evidentiary hearing,' the plaintiff need only make a prima facie showing that the court possesses personal jurisdiction over the defendant." *Distefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir.2001) (quoting *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir.1999), in turn quoting *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir.1981)).

"In determining whether a plaintiff has met this burden, we will not draw 'argumentative inferences' in the plaintiff's favor ... [but] will, however, construe jurisdictional allegations liberally and take as true uncontroverted factual allegations." *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir.1994) (quoting *Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l, Ltd.*, 968 F.2d 196, 198 (2d Cir.1992)). Even as to those factual allegations that are controverted, "[w]e construe the pleadings and affidavits in the light most favorable to [Plaintiffs], resolving all doubts in [their] favor." *Distefano*, 286 F.3d at 84.

## II. Factual Background

Resolving doubts in Plaintiffs' favor, the following relevant facts can be gleaned

---

ness in the State of Louisiana." (Compl. ¶¶ 3–4; Vira Aff. ¶¶ 2–3.) This would make Mavi a citizen of Louisiana, and only Louisiana, for diversity purposes. 28 U.S.C. § 1332(c)(1). From the name of defendant Mavi, LLC, however, it appears more probable that Mavi is in fact a limited liability company rather than a corporation. If so, Mavi would be considered for purposes of diversity jurisdiction to be a citizen of all states of which its members are citizens. *Handelsman v. Bedford Village Assocs. Ltd. Pshp.*, 213 F.3d 48, 51–52 (2d Cir.2000); *Cosgrove v. Bartolotta*, 150 F.3d 729, 731 (7th Cir.1998). As the citizenship of Mavi's members is not alleged in the Complaint or averred in Vira's affidavit, and some members might for all the record shows be citizens of New York, this would mean that complete diversity may not exist, and that the Court thus may lack subject matter jurisdiction under 28 U.S.C. § 1332, *see Carden v. Arkoma Assocs.*, 494 U.S. 185, 187, 195–96, 110 S.Ct. 1015, 108 L.Ed.2d 157 (1990). Because "there is no unyielding jurisdictional hierarchy," *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 578, 119 S.Ct. 1563, 143 L.Ed.2d 760 (1999), and the Court ultimately dismisses the action for lack of personal jurisdiction, it is unnecessary to determine whether a factual allegation agreed to by all parties—here, the allegation that Mavi is a corporation—is sufficient to establish subject matter jurisdiction at the pleading stage even if the Court suspects that it may be incorrect.

from the Complaint and the affidavits submitted by Maranga and Vira in connection with this motion, as clarified at oral argument. Defendant Vira is a resident of the State of Louisiana, and defendant Mavi is organized under that State's laws [2] and has its principal place of business there. Vira is the president of the corporation that is the "non-member manager" of Mavi. (Vira Aff. ¶ 3.) Neither Vira nor Mavi have any property, bank account, mailing address, or telephone listing in the State of New York. Mavi does not have a license to do business in New York, have any employees in New York, have a registered agent in New York, or pay or owe taxes in New York; its purpose as an entity was the ownership of the Econo Lodge Motel located in Gretna, Louisiana (the "Motel"). In February or March of 2002, however, defendant Vira placed an advertisement in *Indian Abroad*, a newspaper which is published in New York State, offering to sell the Motel. Mavi also placed an advertisement in the nationally circulated newspaper *Gujarat Times* offering to sell the Motel; this advertisement requested that potential buyers contact Vira at his Louisiana telephone number.

Nagindas Modi ("Modi"), an acquaintance of Maranga's, brought the *Indian Abroad* advertisement regarding the Motel to Maranga's attention in February 2002. Sometime between February and May of 2002,[3] Modi contacted Vira at Maranga's request to express an interest in purchasing the Motel.[4] In the course of the ensuing negotiations, Maranga traveled to Gretna with Modi, but "the bulk of the negotiations were conducted by telephone, fax communications and mails [sic]" (Maranga Aff. ¶ 8). There were roughly twenty phone calls "either emanating from New York or Gretna, Louisiana" during the negotiations (*id.*), and defendant Vira sent various "pieces of documents" to Maranga's office in New York "by fax and by mail" (*id.* ¶ 9). Vira also "asked for and received [Maranga's] financial and banking information to enable him [to] do due diligence on [Maranga's] financial background in New York." (*Id.* ¶ 10.) Vira did not, however, at any point travel to New York to conduct the negotiations;[5] in fact, Vira

---

**2.** *See supra* note 1 (regarding whether Mavi is in fact a Louisiana corporation or a limited liability company).

**3.** The Complaint and plaintiff Maranga's affidavit differ significantly with respect to when negotiations are said to have begun, the Complaint stating that the plaintiffs contacted the defendants in May 2002 and Maranga's affidavit stating that negotiations began in February 2002. Defendant Vira's affidavit states that he was contacted by Mr. Modi "[i]n February/May 2002" (Vira Aff. ¶ 5).

**4.** According to Vira's affidavit, Modi initially "represented ... that he was interested in acquiring the Motel" without disclosing that he was acting on behalf of Maranga, and it was only at the parties' first meeting in Louisiana that Modi identified Maranga to Vira as "the individual interested in acquiring the Motel." (Vira Aff. ¶¶ 5–6). Maranga's affidavit does not indicate that this description of events is incorrect, and the only allegation in

the Complaint that is arguably inconsistent with it is the general statement that "[o]n or about May 2002, the plaintiffs contacted the defendants and expressed an interest in purchasing the [Motel]" (Compl. ¶ 8). In deciding this motion, however, the Court does not rely on the assumption that Vira first learned of Maranga's existence at a meeting that took place in Louisiana.

**5.** The Complaint alleges that "preliminary discussions and negotiations for the purchase of the property .... were held in Gretna, Louisiana and New York, New York." (Compl. ¶ 9.) As clarified at oral argument, however, this allegation appears to refer to negotiations conducted by telephone or fax communications between parties located in Gretna and parties located in New York, rather than to assert that some negotiations occurred with both sides physically present in New York. (*See* Transcript of Oral Argument ("Tr.") at 3–4.) This reading is consistent with Maranga's affidavit, which avers that the

has never traveled to New York to conduct business, but rather has "traveled to New York less than ten times in the last five years for tourism and vacation purposes only." (Vira Aff. ¶¶ 7–8.)

In the course of the negotiations, Maranga informed Vira "that he was new to the hotel business and was being assisted by his agent at the time, Nagindas Modi, who had a little bit more knowledge in the hospitality industry than himself." (Compl. ¶ 9.) Vira later contacted Modi and offered him $20,000 if he could convince Maranga to purchase the Motel; Vira gave Modi a check for $2,000 as a down-payment on this $20,000 payment, but later put a "stop payment" order on that check. While "the check was delivered in Louisiana" (Tr. at 6), Modi attempted to negotiate the check in New York. "The commercial bribe that ... Vira[ ] offered to Mr. Modi explains the pressure and the lies Mr. Modi told [Maranga] in New York to get [him] to purchase the Motel." (Maranga Aff. ¶ 13.) When Vira offered and paid this bribe, he did so on behalf of not only himself but also Mavi.[6]

In addition to offering Modi this bribe, Defendants provided false and misleading financial records regarding the profitability of the Motel. These records, which made up "the bulk of the financial records for the ... Motel" that were given to Maranga, "painted a far rosier picture of the economic viability of the Motel than was the case." (Maranga Aff. ¶ 11.) The records "were tendered with intent to deceive the plaintiffs and with the intent that the plaintiffs rely upon them and to induce

the plaintiffs to purchase the [Motel]." (Compl. ¶ 12.) Plaintiffs believed these records to be true, and were induced by them to purchase the Motel.

Defendant Vira also "represented to the plaintiffs that he had intimate knowledge of the hotel business," that "the intended purchase was an economically wise one and that [plaintiffs] could not lose," and that "he was so sure of the profitability of the property that he was willing to hold the mortgage on the property." (Compl. ¶ 10.) Vira further promised that one Cindy Bishop, whom he introduced as a former manager of the Motel, would "assist in the management of the property on behalf of the plaintiffs, if the plaintiffs bought the [M]otel." (Id.) "The defendants, acting through the said Cindy Bishop, induced the plaintiffs to purchase the [M]otel," but "[l]ater on, the defendants caused the said Cindy Bishop to stop working for the plaintiffs and go work for the defendants." (Id.)

In reliance on the various representations that Vira had made, "both direct and through his agents" (Compl. ¶ 14), Maranga agreed on behalf of Taj Maran to purchase the Motel. The purchase agreement and associated closing documents were executed in Louisiana in July 2002.

Taj Maran made mortgage payments under the purchase agreement for two years, but when Plaintiffs "attempted to refinance the mortgage loan," (Compl. ¶ 13), they discovered that the financial records had been false. A foreclosure proceeding was commenced in Louisi-

---

bulk of the negotiations were conducted by telephone, fax, and mail, and makes no reference whatsoever to in-person negotiations with both parties present in New York.

**6.** Given that Vira was the President of the "non-member manager" of Mavi (Vira Aff. ¶ 3), and given that in deciding a 12(b)(2) motion it is appropriate to "construe jurisdic-

tional allegations liberally," *Robinson,* 21 F.3d at 507, this is a reasonable harmonization of the allegation in the Complaint that "the defendants" made the promise complained of and delivered the check complained of (Compl. ¶ 11) with the statement in Maranga's affidavit that "the defendant, Arvind Vira" made the promise and delivered the check (Maranga Aff. ¶ 12).

ana based on Defendants' allegation that Taj Maran had stopped making the required mortgage payments to Mavi. In response, Plaintiffs filed this action in the Southern District of New York.

### III. Analysis

■ "In diversity cases, federal courts must look to the forum state's long-arm statute to determine if personal jurisdiction may be obtained over a nonresident defendant." *Savin v. Ranier*, 898 F.2d 304, 306 (2d Cir.1990). If the forum state's long-arm laws indicate that jurisdiction may be obtained, the Court then must "assess whether the court's assertion of jurisdiction under these laws comports with the requirements of due process." *Metropolitan Life Ins. Co. v. Robertson–Ceco Corp.*, 84 F.3d 560, 567 (2d Cir.1996) (citing *Savin*, 898 F.2d at 306). Because the forum state here is New York, the statutory and constitutional inquiries are distinct, as "the New York long-arm statute ... does not provide for in personam jurisdiction in every case in which due process would permit it," *Talbot v. Johnson Newspaper Corp.*, 71 N.Y.2d 827, 527 N.Y.S.2d 729, 522 N.E.2d 1027, 1029 (1988). *Cf. Metropolitan Life Ins. Co.*, 84 F.3d at 567 (because "[c]ourts have interpreted the relevant Vermont long-arm statute ... as reflecting a 'clear policy to assert jurisdiction over individual defendants to the full extent permitted by the Due Process Clause'," the first inquiry "merges" with the second).

Plaintiffs assert that personal jurisdiction may be obtained under two portions of the New York long-arm statute: sections 302(a)(1) and 302(a)(2) of the New York Civil Practice Law and Rules ("CPLR"). These two sections will be addressed in turn.

### A. CPLR § 302(a)(1)

■ Section 302(a)(1) provides in relevant part that "[a]s to a cause of action arising from any of the acts enumerated ... a court may exercise personal jurisdiction over any nondomiciliary ... who in person or through an agent ... transacts any business within the state or contracts anywhere to supply goods or services in the state." N.Y. C.P.L.R. § 302(a)(1) (McKinney 2005). As it is not alleged that Defendants contracted to supply goods or services in New York, whether jurisdiction is available under § 302(a)(1) depends upon whether they "transact[ed] any business within the state" from which the asserted causes of action arise. "A nondomiciliary 'transacts business' under CPLR 302(a)(1) when he "purposefully avails [himself] of the privilege of conducting activities within [New York], thus invoking the benefits and protections of its laws." " *CutCo Industries*, 806 F.2d at 365 (quoting *McKee Electric Co. v. Rauland–Borg Corp.*, 20 N.Y.2d 377, 382, 283 N.Y.S.2d 34, 229 N.E.2d 604 (1967), in turn quoting *Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958)) (alterations in original).

■ The Second Circuit has instructed that "several factors should be considered in determining whether an out-of-state defendant transacts business in New York." *Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 22 (2d Cir.2004). These factors, first laid out in *Agency Rent A Car System v. Grand Rent A Car Corp.*, 98 F.3d 25, 29 (2d Cir.1996), include:

(i) whether the defendant has an ongoing contractual relationship with a New York corporation; (ii) whether the contract was negotiated or executed in New York and whether, after executing a contract with a New York business, the defendant has visited New York for the purpose of meeting with parties to the contract regarding the relationship; (iii) what the choice-of-law clause is in any such contract; and (iv) whether the

contract requires franchisees to send notices and payments into the forum state or subjects them to supervision by the corporation in the forum state.

*Sunward Elecs.,* 362 F.3d at 22; *Agency Rent A Car Sys.,* 98 F.3d at 29 (internal citations omitted). "Although all factors are relevant, no one factor is dispositive and other factors may be considered. 'The ultimate determination is based on the totality of the circumstances.'" *Sunward Elecs.,* 362 F.3d at 22 (quoting *Agency Rent A Car Sys.,* 98 F.3d at 29).

■ All but the first of the specifically enumerated *Agency Rent A Car* factors here weigh against finding transaction of business in New York. Defendant Mavi did have an ongoing contractual relationship with a New York corporation, albeit a relatively minimal one, in that Taj Maran had an ongoing obligation under the contract of sale of the Motel to make mortgage payments to Mavi. The contract, however, was executed in Louisiana. Defendant Vira never visited New York in connection with the contractual relationship. There was no New York choice of law clause in the contract (so that the law governing the contract, a contract executed in Louisiana and concerned with the sale of Louisiana real property, clearly remained that of Louisiana). There was no ongoing supervision emanating from New York, or payment flowing into New York. And while *Agency Rent A Car* does not specify whether a contract is considered to be "negotiated ... in New York," 98 F.3d at 29, when some of the negotiation of a contract takes place outside the state and some takes place by telephone, fax, and mail communication between parties inside the state and parties outside the state, other case law suggests that those portions of the negotiations for the purchase of the Motel that allegedly occurred in the latter manner are insufficient to constitute transaction of business within New York by the Defendants.

■ "While it is true that a person may be subject to [§ 302(a)(1)] jurisdiction, though he remains physically outside the State, it is equally clear that in order to sustain jurisdiction, there must be some transaction attributable to the one sought to be held which occurs in New York." *Ferrante Equip. Co. v. Lasker–Goldman Corp.,* 26 N.Y.2d 280, 309 N.Y.S.2d 913, 258 N.E.2d 202, 205 (1970) (internal citation omitted). "New York courts have consistently refused to sustain section 302(a)(1) jurisdiction solely on the basis of defendant's communication from another locale with a party in New York." *Beacon Enterprises, Inc. v. Menzies,* 715 F.2d 757, 766 (2d Cir.1983) (collecting cases), *quoted with approval in, e.g., Fiedler v. First City Nat'l Bank,* 807 F.2d 315, 318 (2d Cir. 1986); *Burrows Paper Corp. v. R.G. Eng'g, Inc.,* 363 F.Supp.2d 379, 386 (N.D.N.Y.2005); *Longwood Resources Corp. v. C.M. Exploration Co.,* 988 F.Supp. 750, 752 (S.D.N.Y.1997); *Slapshot Bev. Co. v. Southern Packaging Mach.,* 980 F.Supp. 684, 687 (E.D.N.Y.1997). Rather, communications into New York will only be sufficient to establish personal jurisdiction if they were related to some transaction that had its "center of gravity" inside New York, into which a defendant "projected himself." *Wilhelmshaven Acquisition Corp. v. Asher,* 810 F.Supp. 108, 112 (S.D.N.Y.1993); *Palace Exploration Co. v. Petroleum Dev. Co.,* 41 F.Supp.2d 427, 433 (S.D.N.Y.1998) (quoting *Wilhelmshaven,* 810 F.Supp. at 112).

*Parke–Bernet Galleries, Inc. v. Franklyn,* 26 N.Y.2d 13, 308 N.Y.S.2d 337, 256 N.E.2d 506 (1970), one of the two cases cited by Plaintiffs for the proposition that telephonic negotiations can be sufficient under § 302(a)(1), is the leading New York case in which this sort of projection was held to have occurred. The defendant Franklyn, a resident of California, had arranged to participate in an auction of art-

work held by the plaintiff in New York, without himself leaving Los Angeles. At the defendant's request,

> an open telephone line was set up on the evening of the auction between the defendant in Los Angeles and a Mr. Nash, an employee of Parke–Bernet, in the latter's New York City premises. During the entire course of the auction sale, Nash informed the defendant in California of the bids that were being made, the defendant, in turn, gave Nash his bids and the latter relayed the defendant's bids to the auctioneer who announced them to the other bidders in the auction room.

*Parke–Bernet Galleries*, 308 N.Y.S.2d 337, 256 N.E.2d at 507. Noting that "in this day of instant long-range communications, one can engage in extensive purposeful activity here without ever actually setting foot in the State," *id.* at 508; *cf. Agency Rent A Car Sys.*, 98 F.3d at 30 (questioning "whether, in an age of e-mail and teleconferencing, the absence of actual personal visits to the forum is any longer of critical consequence"), the New York Court of Appeals declared it "highly significant that, on his own initiative, the defendant, in a very real sense, projected himself into the auction room in order to compete with the other prospective purchasers who were there." 308 N.Y.S.2d 337, 256 N.E.2d at 508. "The mere fact that the defendant was able to arrange to conduct his extensive and purposeful activity in New York without having to physically come here," the Court of Appeals held, "does not enable him to avoid the jurisdiction of our courts." *Id.* at 509.

As *Wilhelmshaven* points out, 810 F.Supp. at 112, the "center of gravity" of the transaction involved in *Parke–Bernet Galleries* was clearly in New York. So too in *Otterbourg, Steindler, Houston & Rosen, P.C. v. Shreve City Apartments, Ltd.*, 147 A.D.2d 327, 543 N.Y.S.2d 978 (1st Dep't 1989), also cited in *Wilhelmshaven*,

where the underlying transaction was the retention of the plaintiff New York law firm to represent defendants in connection with a bankruptcy proceeding in the Southern District of New York, and § 302(a)(1) jurisdiction was found based on "defendants' participation in a meeting in New York through [one defendant]'s use of an open telephone line during which he made and responded to proposals as to the terms of the contemplated [settlement] agreement and was, generally, actively involved, as well as the numerous letters and telephone calls" related to the bankruptcy proceeding, 543 N.Y.S.2d at 981. Participation by phone in a New York auction, as in *Parke–Bernet*, or in a New York meeting to settle a New York bankruptcy proceeding, as in *Otterbourg, Steindler*, is conceptually quite different from telephonic negotiation between one American party and several foreign parties regarding the purchase of a German oil refinery under a contract not containing a choice of law clause, as was at issue in *Wilhelmshaven*, 810 F.Supp. at 112–113, or telephonic negotiation between a Louisiana party and a New York party regarding the purchase of real estate in Louisiana pursuant to a contract executed in Louisiana and not containing a choice of law clause, as occurred here. In the former cases, the transaction can reasonably be said to have "occur[red] in New York," *Ferrante Equip. Co.*, 309 N.Y.S.2d 913, 258 N.E.2d at 205; in the latter cases, it cannot.

Similarly, in the sole case other than *Parke–Bernet* that Plaintiffs cite for the proposition that telephonic negotiations can be sufficient to establish jurisdiction under § 302(a)(1), *Stevens v. Mad River Holdings, LLC*, No. 01 CIV. 9274, 2002 WL 826959 (S.D.N.Y. May 1, 2002), the center of gravity of the transaction was in New York to a significantly greater extent than it is in this case. The plaintiff in *Stevens* was "a real estate broker licensed

by the State of New York and with his principal place of business in the City, County, and State of New York." 2002 WL 826959 at *1. The defendants, various owners and operators of a ski resort in Ohio, retained the plaintiff "to obtain a mortgage commitment . . . on the resort," and ultimately "accepted a mortgage commitment in the amount of $5,000,000.00 that plaintiff obtained from Business Loan Express, whose office is also located in New York." *Id.* The agreement by which plaintiff Stevens was retained contained a New York choice-of-law clause. *Id.* Thus the third *Agency Rent A Car* factor was satisfied, *see Agency Rent A Car Sys.*, 98 F.3d at 29, and the subject matter of the contract was a mortgage commitment obtained by a New York broker from a New York institution. True, the property on which the mortgage commitment was to be used in *Stevens,* like the property purchased in this case, was outside New York; but in *Stevens* the contract was centered around the obtaining of that mortgage commitment by a New York broker from a New York entity, whereas in this case the contract was centered around the acquisition of the Louisiana real property itself. The mere fact that some telephonic negotiations regarding the contract in this case were conducted while one of the parties to the contract was in New York does not suffice to make the contract, or the telephonic negotiation of it, a transaction of business in New York by the Defendants.

Of course, Plaintiffs need not rely on one occurrence or set of occurrences in particular, such as the alleged telephonic negotiations, to establish that Defendants should be subject to jurisdiction under § 302(a)(1). Rather, "the ultimate determination is based on the totality of the circumstances." *Sunward Elecs.*, 362 F.3d at 22; *Agency Rent A Car Sys.*, 98 F.3d at 29. But the totality of the circumstances is in this case fairly well captured by the *Agency Rent A Car* factors and the *Wil-*helmshaven* "center of gravity" analysis of the telephonic and mail negotiations. Besides the telephonic and mail-based portions of the negotiation of the contract, the plaintiffs can only offer two other circumstances that they claim indicate transaction of business in New York: Defendants' placement of advertisements in *Indian Abroad* and the *Gujarat Times,* and Defendants' acquisition of financial and banking information from the plaintiffs in a manner alleged to raise an inference that Defendants used New York banking institutions in undertaking their "due diligence about the plaintiff's credit worthiness" (Pl. Mem. in Opp'n to Def. Mot. at 7). Neither is sufficient.

■ The placement of advertising in a newspaper that is published in New York adds little justification for the assertion of personal jurisdiction under § 302(a)(1). The record does not indicate that either *Indian Abroad* or *Gujarat Times* circulates only in New York, or even primarily in New York. A defendant is not subject to § 302(a)(1) jurisdiction simply by virtue of having placed advertising in a New–York–based publication. *Davidson Extrusions, Inc. v. Touche Ross & Co.,* 131 A.D.2d 421, 516 N.Y.S.2d 230, 232 (2d Dep't 1987); *Simplicity Machine & Mfg. Co. v. Stevens Co.,* 30 A.D.2d 768, 292 N.Y.S.2d 259, 261 (4th Dep't 1968); *Naples v. Janesville Apparel Co.,* 29 A.D.2d 971, 289 N.Y.S.2d 268 (2d Dep't 1968). Even if Defendants had specifically aimed their solicitations at New York residents, "mere solicitation of business within the state does not constitute the transaction of business within the state, unless . . . [it] is supplemented by business transactions occurring in the state . . . or . . . accompanied by a fair measure of the defendant's permanence and continuity in New York which establishes a New York presence." *O'Brien v. Hackensack Univ. Med. Ctr.,* 305 A.D.2d

199, 760 N.Y.S.2d 425, 427 (1st Dep't 2003). In this case, the solicitations "were not designed to avail [Defendants] of the protections of New York law as they involved business that would take place elsewhere," *National Tel. Directory Consultants v. Bellsouth Adver. & Pub. Corp.*, 25 F.Supp.2d 192 (S.D.N.Y.1998). At bottom, the placement of the ads, even in conjunction with the telephonic negotiations that followed, implies only that Defendants invited residents of New York, and quite possibly others as well, to transact business in Louisiana. That is not the same thing as the Defendants themselves having transacted business in New York.

Plaintiffs' assertion regarding the use of New York banking institutions by Defendants in undertaking due diligence is also not sufficient to establish transaction of business in New York by Defendants. The sole basis in the record for this argument is Maranga's averment that "[t]he defendant Arvind Vira also asked for and received my financial and banking information to enable him [to] do due diligence on my financial background in New York." (Maranga Aff. ¶ 10.) There is nothing in the record indicating that Vira came to New York to do this due diligence, or engaged in extended telephonic or other electronic contacts with New York financial and banking institutions. Even when considered in conjunction with all of the other circumstances, receipt of New York financial and banking information in order to perform due diligence does not imply that Vira transacted business in New York within the meaning of § 302(a)(1), either on his own behalf or on behalf of Mavi.

■ There is one other theory on which Plaintiffs might conceivably have attempted to assert jurisdiction under § 302(a)(1): that Defendants transacted business in New York "through an agent," C.P.L.R. § 302(a), the agent being Modi. But Plaintiffs have not made such an argument, and

without "draw[ing] 'argumentative inferences' in the plaintiff's favor," *Robinson v. Overseas Military Sales Corp.*, 21 F.3d at 507 (quoting *Atl. Mut. Ins. Co.*, 968 F.2d at 198), sufficient support to justify it cannot be gleaned from the Complaint or the affidavits submitted in connection with this motion. Modi is consistently referred to in the Complaint and the affidavits as Plaintiff's agent, not Defendants' agent; there is a general reference to Plaintiffs' reliance on "the aforesaid representations [by Vira], both direct and through his agents" (Compl.¶ 14), but it is not clear who besides Cindy Bishop is alleged to be an agent. Modi's activities in New York are not detailed beyond the brief reference in Maranga's affidavit to "the pressure and the lies Mr. Modi told me in New York to get me to purchase the Motel," which is said to be "explain[ed]" by "the commercial bribe that the defendant, Arvind Vira, offered to Mr. Modi" (Maranga Aff. ¶ 13).

While one need not establish "a formal agency relationship" to obtain § 302(a)(1) jurisdiction on the basis of transaction of business through an agent, one must "convince the court that [the purported agent] engaged in purposeful activities in this State in relation to [the] transaction for the benefit of and with the knowledge and consent of the ... defendants and that they exercised some control over [the purported agent] in the matter." *Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 527 N.Y.S.2d 195, 522 N.E.2d 40, 44 (1988). In addition to failing to describe the extent of Modi's alleged activities in New York in any detail, the Complaint and Maranga's affidavit do not establish that those particular activities were engaged in with the knowledge of Defendants, or that Defendants exercised control over Modi with respect to them. Given that "the plaintiff[s] bear[ ] the burden of showing that the court has jurisdiction over the defendant[s]," *Kernan*, 175 F.3d at 240, the

Court will not find jurisdiction based an argument that has not been explicitly made by Plaintiffs and for which the support would be so thin.

### B. CPLR § 302(a)(2)

■ Section 302(a)(2) of the CPLR allows for long-arm jurisdiction over a person who "commits a tortious act within the state," so long as the cause of action pursued is not one for defamation of character. N.Y. C.P.L.R. § 302(a)(2) (McKinney 2005). Plaintiffs argue that "the defendant, Arvind Vira, committed the tort of commercial bribery when he conferred a benefit, to wit, a check in the amount of $2,000 as down payment on a gratuity, without the consent of the plaintiff." (Pl. Mem. in Opp'n to Def. Mot. at 8.) They further argue that "this tort occurred in New York where the plaintiff's agent heard the offer and received the benefit and acted on it." (*Id.*) This description of the tort's location, however, is not supported by the facts alleged in the Complaint or averred in Maranga's affidavit, and the lack of any indication in the record that the purported tort of commercial bribery actually occurred in New York is fatal to Plaintiffs' attempt to establish personal jurisdiction under CPLR § 302(a)(2) by virtue of that tort.[7]

■ Plaintiffs have conceded that the check constituting the alleged commercial bribery was delivered in Louisiana (Tr. at 6), and neither the Complaint nor Maranga's affidavit indicates that the bribe was initially offered in any different place. Thus, the alleged tort of commercial bribery, so far as the record shows, occurred in Louisiana, not New York. In *Bensusan*

*Restaurant Corp. v. King,* 126 F.3d 25, 28–29 (2d Cir.1997), the Second Circuit affirmed the continued validity under New York law of the rule that "CPLR § 302(a)(2) reaches only tortious acts performed by a defendant who was physically present in New York when he performed the wrongful act," 126 F.3d at 28 (citing *Feathers v. McLucas,* 15 N.Y.2d 443, 458, 261 N.Y.S.2d 8, 209 N.E.2d 68 (1965), and *Platt Corp. v. Platt,* 17 N.Y.2d 234, 237, 270 N.Y.S.2d 408, 217 N.E.2d 134 (1966)). Under this rule, the alleged commercial bribery simply was not a "tortious act within the state [of New York]," CPLR § 302(a)(2). The bribery may perhaps have been a "tortious act without the state causing injury to person or property within the state," CPLR § 302(a)(3), but Plaintiffs have not even attempted to argue that jurisdiction is available under that provision, and could not successfully so argue because neither of the conditions under which § 302(a)(3) may be utilized are met: it is not alleged or averred that either defendant "regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state," CPLR § 302(a)(3)(i), nor that either defendant "expect[ed] or should reasonably [have] expect[ed] the act [giving rise to the suit] to have consequences in the state and derives substantial revenue from interstate or international commerce," CPLR § 302(a)(3)(ii).

■ As with § 302(a)(1) jurisdiction, Plaintiffs could perhaps have argued that § 302(a)(2) jurisdiction over Defendants existed by virtue of what Modi did in New

---

7. Defendants assert that commercial bribery, although a crime under New York law, is in fact not a tort for which a private right of action exists. As the alleged commercial bribery did not take place in New York and therefore cannot support personal jurisdiction under § 302(a)(2) even assuming *arguendo* that commercial bribery is a tort, we need not and do not determine whether a private right of action for commercial bribery exists under New York law.

York, on the theory that Modi was acting as Defendants' agent. Such an argument would fail, however, both for the reasons explained above, *see supra* Part III.A, and because it has not been sufficiently established that Modi committed a tort. To the extent that Plaintiffs attempt to allege the commission of fraud by Modi, neither the allegations of the Complaint nor the averments of Maranga's affidavit meet the standard of particularity that would be required in a complaint by Rule 9(b) of the Federal Rules of Civil Procedure, and certainly it would not make sense for *less* specificity to be required in the submission of affidavits than in initial pleadings. The Second Circuit "has read Rule 9(b) to require that a complaint '(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'" *Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir.2004) (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir.1993)). The general reference in Maranga's affidavit to "the lies Mr. Modi told me in New York to get me to purchase the Motel" (Maranga Aff. ¶ 13) does not meet the first or fourth of these requirements at all, and also fails with respect to the "when" portion of the third requirement.

## IV. Disposition of the Case

Despite this Court's lack of personal jurisdiction over the defendants, it might be permissible to transfer this case to the United States District Court for the Eastern District of Louisiana rather than dismissing it, if doing so were found to be "in the interest of justice." *Corke v. Sameiet M.S. Song of Norway*, 572 F.2d 77, 80 (2d Cir.1978).[8] However, Plaintiffs have not requested that the Court so transfer the case if personal jurisdiction were found to be lacking. It is entirely possible that Plaintiffs would find transfer undesirable: they have expressed an unwillingness to defend in the Louisiana foreclosure action (Tr. at 7), and might well prefer to appeal a judgment dismissing this action with the hope that they could eventually return to the Southern District of New York, rather than prosecuting this action in Louisiana. (An order transferring the case would be "an interlocutory order that is not immediately reviewable by appeal," *SongByrd, Inc. v. Estate of Grossman*, 206 F.3d 172, 176 (2d Cir.2000).) Furthermore, the absence of any request by Plaintiffs that the Court transfer the action has deprived Defendants of an opportunity to argue why transferring the action would not be in the interest of justice. Therefore, the Court will simply dismiss this action for lack of personal jurisdiction, rather than transferring it.

## V. Conclusion

For the reasons stated above, Defendants' motion to dismiss the Complaint for lack of personal jurisdiction is GRANTED. The Complaint is DISMISSED, and the Clerk of the Court is directed to close this case.

SO ORDERED.

---

**8.** It is not completely clear whether either this Court or the United States District Court for the Eastern District of Louisiana has subject matter jurisdiction over this action under 28 U.S.C. § 1332. *See supra* note 1 (regarding possible lack of complete diversity if Mavi LLC is in fact a limited liability company rather than a corporation). If subject matter jurisdiction were lacking, a transfer would not cure the problem.