Antonio SANDOVAL, Plaintiff,

v.

The ABACO CLUB ON WINDING
BAY and Peter De Savary,
Defendants.

No. 05 Civ. 7921(SCR).

United States District Court,
S.D. New York.

July 30, 2007.

■■■■■■

Thomas Peter Giuffra, Barton Barton & Plotkin, New York, NY, for Plaintiff.

Robin D. Fessel, Suhana S. Han, Sullivan and Cromwell, LLP, New York, NY, for Defendants.

## DECISION AND ORDER

STEPHEN C. ROBINSON, District Judge.

## I. Background

### A. Procedural history

Antonio Sandoval (the "Plaintiff"), a resident of Westchester County, filed this diversity action on September 12, 2005 alleging negligence, as well as violations of state and federal labor laws, by an entity named in the Complaint as The Abaco Club on Winding Bay [1], a corporation organized under the laws of the Bahamas with its principal place of business in the Bahamas, and Peter De Savary ("De Savary"), the owner and operator of The Abaco Club. The defendants filed a motion to dismiss the Complaint pursuant to Fed. R.Civ.P. 12(b)(2) for a lack of personal jurisdiction. In his opposition to the motion to dismiss, Plaintiff explicitly stated that he does not oppose the dismissal of all claims against De Savary or all claimed violations of state and federal labor laws. Accordingly, we need only address this motion as it pertains to the Abaco Club Association, Ltd. (the "Defendant" or the "Club"). For the reasons discussed below,

Defendant's motion to dismiss is GRANTED.

### B. Facts

Plaintiff alleges that on April 9, 2004, while working at Defendant's resort and golf course in the Bahamas, he sustained serious injuries "when the PVC pipe he was servicing exploded when the water supply was turned on by employees of the defendant." Compl. at ¶ 33. At the time of the accident, Plaintiff was employed by Tanto Irrigation, LLC ("Tanto"), a New York corporation that contracted with Defendant to install an irrigation system at the golf course at the Club. Compl. at ¶¶ 28, 31.

The contract between Defendant and Tanto was formed in 2003. *See* Def. Mem. of Law Ex. E (contract between Defendant and Tanto). Tanto representatives traveled to the Bahamas at least twice for contract negotiations, but no representative of Defendant ever traveled to New York as part of the negotiations. Scott Decl. at ¶ 13. There were several phone calls between Tanto and Defendant as part of the contract negotiations, but it is not clear whether those conversations involved a telephone in New York. *See* T. Tanto Decl. at ¶ 5, 7. Upon the conclusion of negotiations Defendant signed the contract in the Bahamas, *see* Scott Decl. at ¶ 13, while Tanto signed it in New York. The physical labor for the irrigation project was completed entirely in the Bahamas between December 2003 and October 2004. Scott Decl. at ¶ 13. All of Defendant's payments on the contract originated in the Bahamas and were transmitted directly into a New York bank account.

---

1. As pointed out in the papers in support of the instant motion to dismiss, The Abaco Club at Winding Bay is not a legally cognizable entity; instead, according to defendants, the proper legal name for this party is the Abaco Club Association, Ltd. This Court will refer to that party by its proper legal name in the this Decision and Order.

In addition, the Defendant and Tanto engaged in various telephone, fax, and e-mail communications during the course of the contract. For example: (i) Tanto sent invoices from New York to the Bahamas via fax or e-mail; (ii) Defendant and Tanto at times addressed issues regarding payment via e-mail between the Bahamas and New York; (iii) time sheets detailing work performed were faxed from the Bahamas to New York; (iv) Tanto faxed "change orders" from New York to Defendant in the Bahamas; and (v) representatives from Defendant and Tanto engaged in periodic conference calls between the Bahamas and New York to discuss miscellaneous issues pertaining to the project.

Plaintiff asserts in his declaration that the Tanto employees who were sent to the Bahamas to complete this project "were essentially manual laborers responsible for performing the physical labor necessary to complete the project" and that the planning and logistics for the job were managed by Tanto's New York office. Pl. Decl. at ¶ 8. Defendant, however, submitted a declaration from William Bartels, the current president of Tanto, who stated that "the installation required daily, onsite oversight and control by senior managers who could respond to issues as they arose. It would not have been feasible for Tanto's New York office to manage this project remotely, and it did not do so." Bartels Decl. at ¶ 6. There is no dispute that the relationship between Defendant and Tanto concluded when the irrigation project was completed. Scott Decl. at ¶ 14.

## II. Analysis

### A. Standard of review

■ For a motion to dismiss for lack of personal jurisdiction under Fed.R.Civ.P. 12(b)(2), "the plaintiff bears the burden of showing that the court has jurisdiction over the defendant." *Metro. Life Ins. Co.*

*v. Robertson–Ceco Corp.,* 84 F.3d 560, 566 (2d Cir.1996). Plaintiff here need only make a prima facie showing that jurisdiction exists; in analyzing this question, this Court must construe all pleadings and affidavits in the light most favorable to the Plaintiff. *See DiStefano v. Carozzi N. Am., Inc.,* 286 F.3d 81, 84 (2d Cir.2001). In reviewing a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(2), a court may look to evidence outside the pleadings. *Barrett v. Tema Dev. (1988), Inc.,* 463 F.Supp.2d 423, 425 (S.D.N.Y.2006)

■ Whether a federal district court has personal jurisdiction over a non-resident defendant is first determined with reference to the law of the jurisdiction in which that district court sits. *See PDK Labs, Inc. v. Friedlander,* 103 F.3d 1105, 1108 (2d Cir.1997). The court must then assess whether an assertion of jurisdiction would comport with federal constitutional due process requirements. *See Metro. Life Ins. Co.,* 84 F.3d at 567. Here, this Court must consider whether it has general jurisdiction over the Defendant under New York CPLR § 301 or specific jurisdiction under CPLR § 302.

### B. General jurisdiction—CPLR § 301

■ It is well established that New York courts may only exercise general jurisdiction over a foreign corporation that is "engaged in such a continuous and systematic course of doing business in New York as to warrant a finding of its presence in [the state]." *Jazini by Jazini v. Nissan Motor Co.,* 148 F.3d 181, 184 (2d Cir.1998) (internal quotations omitted). To assess whether a foreign corporation has maintained such continuous and systematic contacts with New York, courts focus on, among other factors: "whether the company has an office in the state, whether it has any bank accounts or other property in the

state, whether it has a phone listing in the state, whether it does public relations work there, and whether it has individuals permanently located in the state to promote its interests." *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 98 (2d Cir.2000).

■ Plaintiff does not dispute that Defendant has its principal place of business in the Bahamas, and does not contest Defendant's assertion that it has never registered to do business in New York, never entered into contracts to supply goods or services in New York, and never paid taxes in New York. *See* Scott Decl. at ¶¶ 3, 6–8. Further, Plaintiff offers no evidence that Defendant has ever owned or leased real estate in New York, or that Defendant has ever had any subsidiaries, offices, agents, employees, phone listings, mailing addresses, or bank accounts in New York. *Id.* at ¶¶ 4–5. In sum, Plaintiff has made no argument whatsoever—either in his papers opposing the instant motion or at oral argument before this Court—to support a claim that Defendant is subject to general jurisdiction in New York. Accordingly, we find that Defendant is not subject to general jurisdiction under CPLR § 301.

## C. Specific jurisdiction—CPLR § 302

■ CPLR § 302(a)(1) provides that a court may exercise personal jurisdiction over a nonresident defendant if that defendant "transacts any business within the state" and the cause of action arises from those business transactions. The New York State Court of Appeals has held that "proof of one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted." *Deutsche Bank Sec., Inc. v. Mont. Bd. of Inves.*, 7

N.Y.3d 65, 71, 818 N.Y.S.2d 164, 850 N.E.2d 1140 (2006). Further, commercial actors may be subject to long-arm jurisdiction even when they have only used "electronic and telephonic means to project themselves into New York to conduct business transactions." *Id.*

### i. Transacts business

■ It is well established that "a non-domiciliary 'transacts business' under CPLR 302(a)(1) when he purposefully avails himself of the privilege of conducting activities within New York, thus invoking the benefits and protections of its laws." *CutCo Industries, Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir.1986) (internal quotations omitted). Multiple district courts in this Circuit have held, however, that "the mere existence of a contract with a New York corporation is not sufficient to constitute the transaction of business under § 302(a)(1) of the CPLR." *Pieczenik v. Cambridge Antibody Tech. Group*, No. 03 Civ. 6336(SAS), 2004 WL 527045, **3–4, 2004 U.S. Dist. LEXIS 4127, *19–20 (S.D.N.Y. Mar. 16, 2004); *see Spencer Trask Ventures, Inc. v. Archos S.A.*, No. 01 Civ. 1169(LAP), 2002 WL 417192, *4, 2002 U.S. Dist. LEXIS 4396, *13 (S.D.N.Y. Mar. 18, 2002).

The Second Circuit has enumerated several non-dispositive factors for courts to consider as part of the "transacts business" component of § 302(a)(1), including: (1) whether the defendant has an ongoing contractual relationship with a New York corporation; (2) whether the contract was negotiated or executed in New York and whether the defendant visited New York to meet with the parties to the contract; (3) the choice-of-law clause in the contract; and (4) whether the contract requires defendants to send notices and payments into the forum state or subjects them to supervision in the forum state. *See Sunward*

*Elecs., Inc. v. McDonald,* 362 F.3d 17, 22 (2d Cir.2004). The final determination must be made based on the totality of the circumstances. *Id.* We consider each of these factors in turn.

### (a) Ongoing contractual relationship with New York corporation

█ As to the first factor, the parties did not have any relationship either prior or subsequent to the instant short-term contract to install the irrigation system at the Abaco Club. *See* Bartels Decl. at ¶ 8. Other district courts within this Circuit have held that a single short-term contract is not enough to constitute an "ongoing contractual relationship" for the purposes of personal jurisdiction. *See Mortgage Funding Corp. v. Boyer Lake Pointe, L.C.,* 379 F.Supp.2d 282, 287 (E.D.N.Y.2005) (one contract did not establish an ongoing contractual relationship); *Burrows Paper Corp. v. R.G. Eng'g, Inc.,* 363 F.Supp.2d 379, 385 (N.D.N.Y.2005) (no ongoing contractual relationship where contract at issue is the only transaction defendant ever entered into with plaintiff); *compare Sea Tow Servs. Int'l, Inc. v. Pontin,* 472 F.Supp.2d 349, 359 (E.D.N.Y.2007) (finding ongoing contractual relationship where parties did business for more than 14 years). In sum, the short-term contract between Defendant and Tanto here cannot be considered an "ongoing contractual relationship" that would subject Defendant to personal jurisdiction in New York.

### (b) Whether contract was negotiated or executed in New York and whether Defendant visited New York to meet with the parties to the contract

█ From the materials submitted by the parties, it is clear that the bulk of the negotiations regarding this contract took place in the Bahamas, that Defendant exe-cuted the contract in the Bahamas, and that no representative of Defendant ever traveled to New York to meet with anyone regarding the contract.

Even if the Tanto declaration is read in the light most favorable to the Plaintiff and be understood to mean that a small number of telephone conversations regarding the contract negotiation did take place between the Bahamas and New York, such discussions alone are not enough to confer jurisdiction on this set of facts. *See Maranga v. Vira,* 386 F.Supp.2d 299, 306 (S.D.N.Y.2005) ("when some of the negotiation of a contract takes place outside the state and some takes place by telephone, fax, and mail communication between parties inside the state and parties outside the state ... those portions of the negotiations ... that allegedly occurred in the latter manner are insufficient to constitute transaction of business within New York by the Defendant").

There is no dispute that Defendant executed the contract in the Bahamas and Tanto executed the contract in New York. The fact that *Plaintiff's employer* signed the agreement in New York, however, does not subject *Defendant* to personal jurisdiction here. *See Falow v. Cucci,* No. 00 Civ. 4754(GBD), 2003 WL 22999458, *5, 2003 U.S. Dist. LEXIS 23019, *13 (S.D.N.Y. Dec. 19, 2003) ("the unilateral activity of plaintiff executing a contract in New York is an insufficient basis upon which to acquire jurisdiction over a non-domiciliary defendant"); *Galgay v. Bulletin Co.,* 504 F.2d 1062, 1065 (2d Cir.1974). Thus, the second factor supports Defendant's position that personal jurisdiction is improper.

### (c) Choice-of-law clause

The parties agree that the contract at issue here did not contain a choice-of-law clause; accordingly, this factor provides no

support for finding Defendant subject to personal jurisdiction in New York.

### (d) Whether contract requires notices and payments to be sent into New York or subjects Defendant to supervision in New York

■ There is no dispute that the contract did not specifically require that payments were to be sent to New York. Defendant admits that it did in fact send its payments to New York, but this is not sufficient basis to establish personal jurisdiction. *See Roper Starch Worldwide v. Reymer & Assocs.*, 2 F.Supp.2d 470, 475 (S.D.N.Y.1998) ("merely sending payment to New York is not sufficient to establish personal jurisdiction over a defendant under § 302(a)(1)").

■ Plaintiff maintains that work pursuant to the contract was in fact supervised by Tanto employees in New York, and therefore that the contract should be interpreted to mean that Defendant was subject to supervision in New York. This Court finds that argument unavailing on several levels. First, the notion that a construction project of this sort could be wholly supervised from a remote location makes little sense; even if certain decisions were made by Tanto management in New York, day-to-day operational assignments and decisions would necessarily be addressed by on-site personnel. Indeed, the declaration of William Bartels, the president of Tanto, states that two of the Tanto employees and/or sub-contractors who were sent to the Bahamas in conjunction with this project "were experienced project foremen who managed the installation of the irrigation system on a daily basis, including interpreting the design plan, supervising the laborers, directing the installation of the various system components. . . ." Bartels Decl. at ¶ 5.

Without question, certain "administrative and logistical" work was performed in New York, but "the installation required daily, onsite oversight and control by senior managers who could respond to issues as they arose." *Id.* at ¶ 6. Defendant signed a contract in the Bahamas for work that was to be performed on its property in the Bahamas; the fact that Tanto decided to carry out some of the logistics and internal management of the contract project by using employees based in New York does not speak to the issue of *Defendant's* contacts with the forum. Based on the information supplied to this Court directly by Tanto, it is impossible to conclude that Defendant was subject to "supervision" in New York under the terms of this contract in a manner that would subject Defendant to personal jurisdiction in New York.

Plaintiff also argued that the "center of gravity" of this contract was somehow split between the Bahamas and New York, because of all of the supervisory work that took place in New York. Given, however, that the contract was largely negotiated in the Bahamas, was focused on an irrigation project on Defendant's property in the Bahamas, and that all of the physical work performed in fulfillment of the contract was performed in the Bahamas, the only logical conclusion to draw here is that the center of gravity of this contract was in the Bahamas.

Accordingly, none of the communications that took place between Defendant and Tanto in connection with the contract are sufficient to confer jurisdiction here. *Id.* at 474–75 ("phone calls that seek to insure fulfillment of contract terms do not 'project' a defendant into a state sufficiently to confer jurisdiction" *and* "fax and mail contact provides a basis for CPLR § 302(a)(1) jurisdiction only when the defendant has purposely projected himself into New York

to avail himself of the benefits and protections of its laws"); *see Maranga*, 386 F.Supp.2d at 306 ("New York courts have consistently refused to sustain § 302(a)(1) jurisdiction solely on the basis of defendant's communication from another locale with a party in New York" *and* "communications into New York will only be sufficient to establish personal jurisdiction if they were related to some transaction that had its 'center of gravity' inside New York, into which a defendant 'projected himself.' ")

The circumstances here are readily distinguishable from the two principal cases cited by Plaintiff to show that electronic communications with New York may be enough to confer personal jurisdiction on a non-resident defendant. In *Parke–Bernet Galleries, Inc. v. Franklyn*, 26 N.Y.2d 13, 17–18, 308 N.Y.S.2d 337, 256 N.E.2d 506 (1970), the defendant participated from California in an auction held in New York by receiving and transmitting bids over the telephone; when defendant failed to pay for the items he purchased at the auction, he was sued by the art gallery. Though defendant's only contacts with New York were via telephone, the New York Court of Appeals found that he purposefully availed himself of the privilege of conducting activities in New York by projecting himself into the auction room over the phone line, which made the exercise of personal jurisdiction proper.

In *Deutsche Bank*, 7 N.Y.3d at 69–70, 818 N.Y.S.2d 164, 850 N.E.2d 1140, defendant's employee in Montana negotiated the terms of a multi-million dollar transaction via electronic means, including the telephone and the Bloomberg Messaging System. The purchase at issue was just one of eight substantial bond transactions defendant conducted with New York entities in a 13–month timeframe. The Court of Appeals determined that defendant was

subject personal jurisdiction because it repeatedly and knowingly projected itself into New York for the purposes of negotiating and concluding substantial transactions.

The electronic contact between defendant and New York in both of these cases formed the crux of the dispute, and represented a clear effort on the part of the defendant to engage in dealings based in New York—the auction physically took place in New York, and the bonds at issue in *Deutsche Bank* were being sold by a New York entity. Defendant's ties to New York in the instant matter are far more tenuous; as discussed above, the center of gravity in this action is the Bahamas, where the contract was negotiated and where all of the physical work on the contract was performed. The vast majority of communications between Defendant and New York cited by Plaintiff are best described as ministerial administrative matters. Even if certain isolated communications were of slightly more substance, none come close to the type of direct availment detailed in *Parke–Bernet Galleries* and *Deutsche Bank*.

Taking these factors together, Plaintiff has failed to show that Defendant "transacts business" in New York such that it should be subject to personal jurisdiction under CPLR § 302(a)(1)—all four of the factors articulated by the Second Circuit in *Sunward Elecs.* point to the conclusion that exercising personal jurisdiction here would be inappropriate. Defendant's motion to dismiss for lack of personal jurisdiction is therefore GRANTED.

Because Plaintiff has not met his burden of demonstrating that Defendant "transacts business" within the meaning of CPLR § 302(a)(1), there is no need to address whether the cause of action arises from Defendant's purported transactions, or whether the exercise of personal juris-

diction would comport with the constitutional requirement of due process.

### III. Conclusion

For the reasons discussed above, Defendant's motion to dismiss for lack of personal jurisdiction is GRANTED. The Clerk of the Court is directed to close this case.

IT IS SO ORDERED.