Patrick BARRETT, Plaintiff,

v.

TEMA DEVELOPMENT (1988), INC., Defendant.

No. 06 CIV. 0144(VM).

United States District Court, S.D. New York.

Nov. 15, 2006.

David John Hoffman, Law Office David J. Hoffman, New York, NY, for Plaintiff.

Gail Lee Gottehrer, Thomas Gerard Rohback, Leboeuf, Lamb, Greene & Macrae, LLP, Hartford, CT, for Defendant.

## *DECISION AND ORDER*

MARRERO, District Judge.

Plaintiff Patrick Barrett ("Barrett"), a resident of New York, brought this action under the Court's diversity of citizenship jurisdiction asserting breach of fiduciary duty and breach of contract claims against defendant Tema Development (1988), Inc. ("Tema"), a Delaware corporation with it principal place of business in Texas. Barrett's claims arise out of his real estate business relationship with Wa'el Khoury ("Khoury"), the sole director of Tema, after February, 2002. Before the Court is Tema's motion to dismiss Barrett's complaint pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal ju-

risdiction.[1] For the reasons described below the motion is granted.

## I. BACKGROUND [2]

Barrett's claims of breach of contract and breach of fiduciary duty assert that Tema breached the Investment Understanding Agreement, dated December 1, 2002 (the "IUA"), between the parties, under which Barrett was to seek out real estate investment opportunities for acquisition in the United States and Tema would provide the capital. As alleged in the complaint, on the verge of closing, Tema declined to pursue an investment opportunity, identified by Barrett, in a property located in Massachusetts called Great Woods. According to Barrett, Tema's decision was unrelated to the business, legal or economic aspects of the deal. Thereafter, Tema terminated its participation in the IUA. (*Id.* ¶ 20.)

To pursue these claims, Barrett must first establish personal jurisdiction over Tema. Barrett alleges numerous facts which he argues justify the exercise of long-arm jurisdiction over Tema in New York pursuant to New York Civil Practice Law and Rules ("CPLR") § 302(a)(1). First, Barrett states that he "had business dealings with Defendant Tema" through Delma Associates, LP, whose principal place of business is in New York.

(Compl. ¶ 7.) After his employment with Delma Properties, Inc. ended, according to Barrett, he entered into an agreement with Tema, through Khoury, to jointly pursue future real estate investments. While negotiating the IUA Barrett, Khoury, and Khoury's advisors "had conferences, both by telephone and in person." (*Id.* ¶ 10.) Subsequently, Barrett and Khoury allegedly "met in New York ... and discussed the [agreement]." (*Id.* ¶ 13.) Additionally, Barrett and Tema retained the New York office of an international law firm in negotiating with the seller of a particular property and Tema paid the firm's bills.

■ In his Memorandum of Law in Opposition to Tema's Motion to Dismiss, Barrett further alleges:

> Defendant had numerous contacts and communications with Plaintiff in New York concerning the transactions at issues [sic] in this case. Includes [sic] were: telephone calls and emails to Mr. Barrett in New York, engagement of Paul Hastings law firm in New York (paid by Defendant), and bank accounts in Bank Audi in New York maintained by the Defendant.

(Plaintiff's Memorandum of Law in Opposition to the Motion to Dismiss, dated April 17, 2006 ("Pl.'s Opp'n"), at 5.)[3]

Barrett's supporting declaration concedes that "[t]he [IUA] was prepared after

---

**1.** Tema actually moved to dismiss on numerous grounds in addition to lack of personal jurisdiction, including: 1) impermissible claim splitting; 2) failure to join indispensable parties; 3) failure to state a claim for breach of fiduciary duty; and 4) that the breach of contract claim is barred by the Statute of Frauds. At a conference before the Court following Tema's filing of the instant motion, the parties agreed, at the direction of the Court, to brief only the personal jurisdiction issue, which is thus the only grounds for dismissal before the Court at this time.

**2.** The factual recitation below derives from Barrett's Complaint, dated Jan. 9, 2006

("Compl."). Except where quoted or otherwise specifically cited, no further reference will be made to this document.

**3.** The Court notes that Plaintiff asserts several facts in his memorandum of law and the accompanying declaration that are not included in his complaint. In reviewing a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(2), "[t]o determine whether it has jurisdiction, a court may look to evidence outside the pleadings." *Seaweed, Inc. v. DMA Product & Design & Marketing LLC,* 219 F.Supp.2d 551, 554 (S.D.N.Y.2002) *citing CutCo Indus., Inc. v. Naughton,* 806 F.2d 361, 364 (2d Cir. 1986); *see also Corning Inc. v. Shin Etsu*

[Barrett] met with Wa'el Khoury and [his associate] in London" but adds that "[t]he final draft [of the IUA] was sent to [Barrett] in New York." (Declaration of Patrick Barrett, dated April 17, 2006 ("Barrett Decl."), ¶ 3.) The Declaration also states that "[i]n or about March, 2003, [Barrett] had a conversation with Mr. Khoury in person in New York concerning the [IUA] and potential real estate investments to be made pursuant thereto," (*id.* ¶ 13), and that "[Barrett] had sustained contact with Mr. Khoury, [and his associates] all acting on behalf of [Tema] over the course of several months" (*id.* ¶ 14). Finally, Barrett's Declaration contains additional facts about Bank Audi: "Bank Audi's principal place of business is in New York, New York, and Mr. Khoury serves on the board of directors. On information and belief, Mr. Khoury or his family has a beneficial interest in Bank Audi." (*Id.* ¶ 5.)

Although it is not explicitly mentioned in the complaint, in Barrett's response to Tema's motion to dismiss, or in either of the supporting declarations, the Court also notes that the IUA, a copy of which is annexed to the complaint, contains a provision requiring Khoury to "request that Bank Audi take phone calls from prospective Sellers and indicate that Tema and/or its affiliates have sufficient capital in the bank to close a transaction should we decide to proceed." (IUA, ¶ 6, attached to Compl. as Exhibit A.)

## II. DISCUSSION

### A. PERSONAL JURISDICTION

■ Barrett contends that this Court has personal jurisdiction over Tema because the "Defendant is subject to long-arm jurisdiction in this District." (Compl. ¶ 4.) Barrett's subsequent submissions specify CPLR § 302(a)(1) as the basis for this Court's jurisdiction. Tema challenges personal jurisdiction over it on the grounds that in a somewhat related action between the parties, the New York State Supreme Court, affirmed by the Appellate Division, has already found personal jurisdiction over Tema lacking, and that Tema's actions related to the alleged contract are not sufficient to establish jurisdiction. As a threshold matter, the Court notes that the "the amenability of a foreign corporation to suit in a federal court in a diversity action is determined in accordance with the law of the state where the court sits." *Arrowsmith v. United Press International,* 320 F.2d 219, 223 (2d Cir. 1963)(en banc).

### 1. Preclusive Effect of State Court Jurisdiction Ruling

■ As discussed above, in the disposition of Barrett's state court action arising out of his partnership and employment relationships with Delma Associates and Delma Properties, the New York Supreme Court found personal jurisdiction over Tema lacking. (*See Barrett v. Toroyan,* No. 112012/04 (N.Y. Sup.Ct. June 29, 2005) at 5, attached as Exhibit 1 to Affidavit of Gail L. Gottehrer, Esq. in Support of Defendant's Motion to Dismiss the Complaint, dated Mar. 7, 2006 ("Gottehrer Aff.")) In that action, Barrett alleged that Tema, as well as other individual and insti-

---

*Quartz Prods. Co.,* No. 00–7931, 242 F.3d 364, 2000 U.S.App. LEXIS 31853, at *6 (2d Cir. Dec. 11, 2000) (when considering a motion to dismiss pursuant to Rule 12(b)(2), a "district court has considerable procedural leeway ... and it may accept affidavits if it so chooses.") (citations omitted); *Marine Midland Bank,*

*N.A. v. Miller,* 664 F.2d 899, 904 (2d Cir. 1981) ("If the court chooses not to conduct a full-blown evidentiary hearing on the motion, the plaintiff need make only a prima facie showing of jurisdiction through its own affidavits and supporting materials.").

tutional defendants, had converted asset management fees. (Complaint in *Barrett v. Toroyan*, No. 112012/04 (N.Y.Sup.Ct.), dated Aug. 19, 2004 ("State Court Compl."), ¶¶ 191–200, attached as Exhibit 2 to Gottehrer Aff.) The Supreme Court, New York County, granted Tema's motion to dismiss for lack of personal jurisdiction because Tema's previous participation in arbitrations in New York had no relation to Barrett's claims and Tema's investment in New York business entities did not, by itself, confer jurisdiction. (*See Barrett v. Toroyan*, No. 112012/04 (N.Y. Sup.Ct. June 29, 2005) at 5, attached as Exhibit 1 to Gottehrer Aff.) In April 2006, the New York Appellate Division affirmed the dismissal of the claim against Tema for lack of personal jurisdiction. (*See Barrett v. Toroyan*, No. 112012/04 (N.Y.App.Div. Apr.18, 2006) at 31, attached as Exhibit 1 to Affidavit of Thomas G. Rohback in Support of Defendant's Memorandum of Law in Support of its Motion to Dismiss the Complaint for Lack of Personal Jurisdiction, dated May 1, 2006 ("Rohback Aff.")). The initial question presently before this Court is the preclusive effect of the state courts' jurisdictional determination on Barrett's instant action. Pursuant to 28 U.S.C. § 1738[4] federal courts must "give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so . . . ." *Allen v. McCurry*, 449 U.S. 90, 96, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980).

Barret's claim in the case at hand is not barred by res judicata because a dismissal for lack of personal jurisdiction is not a final judgment on the merits.

> [T]he doctrine of res judicata provides that when a final judgment has been entered on the merits of a case, it is a finality as to the claim or demand in controversy, concluding parties and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose.

*SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1463 (2d Cir.1996) *quoting Nevada v. United States*, 463 U.S. 110, 129–30, 103 S.Ct. 2906, 77 L.Ed.2d 509(1983); *see also Fed.R.Civ.P. 41(b)*; *Arnold Graphics Industries, Inc. v. Independent Agent Center, Inc.*, 775 F.2d 38, 41 (2d Cir.1985); 18A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 4436 (3d ed. 2006) ("[D]ismissal for want of personal jurisdiction . . . does not preclude a second action on the same claim in a court that can establish personal jurisdiction.").

Tema contends, however, that collateral estoppel, otherwise known as issue preclusion, precludes Barrett from relitigating the issue of personal jurisdiction over Tema in New York. The New York Court of Appeals has indicated that collateral estoppel "precludes a party from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against that party . . ., whether or not the tribunals or causes of action are the same." *Parker v. Blauvelt Volunteer Fire Co.*, 93 N.Y.2d 343, 690 N.Y.S.2d 478, 712 N.E.2d 647, 651 (1999) (internal quotations and citation omitted). Collateral estoppel applies "if the issue in the second action is identical to an issue which was raised, necessarily decided and material in the first action, and the plaintiff had a full and fair oppor-

---

**4.** "[J]udicial proceedings [of any State of the United States] shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of any such State . . . ." 28 U.S.C. § 1738 (2000).

tunity to litigate the issue in the earlier action." *Id.*

Tema relies on two federal district court diversity cases which apply general principles of collateral estoppel of New York and other states to preclude plaintiff from relitigating personal jurisdiction after a state court had previously found personal jurisdiction over the defendant lacking. The Court finds those cases distinguishable from the instant dispute. In *1 Five 0, Inc. v. Schulman, Inc.*, No. 99 Civ. 0354E, 2000 WL 744003, at *1 (W.D.N.Y. June 5, 2000), the court found, under the doctrine of collateral estoppel, that it was "bound" by a prior state court determination that the defendant was not subject to personal jurisdiction in New York. Similarly, in *Kitces v. Wood*, 917 F.Supp. 338, 341 (D.N.J. 1996), the Court found it was "estopped from opining on the identical jurisdictional issue which the New Jersey state court has already decided." However, in each of those cases, the personal jurisdiction issue before the district court was identical to the same issue already decided by the state court because the plaintiffs asserted the same cause of action based on the same set of facts. *See 1 Five 0, Inc.*, 2000 WL 744003, at *1 (that plaintiff's state court suit in New York alleged "misconduct similar to that alleged herein"); *Kitces*, 917 F.Supp. at 342 (finding that "[n]o new or different facts are alleged in Kitces federal complaint which would impact upon a court's determination of personal jurisdiction," and plaintiff's federal complaint was "virtually identical to the two prior complaints filed" in state courts).

Personal jurisdiction must be determined "with respect to each claim asserted." *Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 24 (2d Cir.2004). That determination clearly requires a fact-sensitive analysis. *See PDK Labs v. Friedlander*, 103 F.3d 1105, 1108 (2d Cir.1997) (noting that "personal jurisdiction inquiries are necessarily fact sensitive because each case is dependent upon its own particular circumstances.") (internal quotations and citation omitted). Unlike the cases cited by Tema, the causes of action Barrett asserts in this court are different from those he claimed in the state court case (he alleged conversion in state court, and breach of contract and breach of fiduciary duty in the instant action). Additionally, the facts underlying Barrett's claim to jurisdiction in this Court are substantially different from the facts upon which he argued for personal jurisdiction in his state court action. Because of these significant differences, the Court concludes that the issue of personal jurisdiction presented in the instant action is not identical to the issue of personal jurisdiction decided in the state court case. Therefore, this Court is not bound by the state court's determination that it had no personal jurisdiction over Tema. The Court will now consider whether it may properly exercise jurisdiction over Tema in this case under New York's long-arm jurisdiction statute.[5]

### 2. *Standard of Review*

■ At this stage of the litigation, " 'prior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the motion by pleading in good faith ... legal-

---

**5.** The Court recognizes that "[i]n deciding a question of personal jurisdiction, district courts must conduct a two-part analysis, looking first to the state's long-arm statute and then analyzing whether jurisdiction comports with federal due process." *Mario Valente Collezioni, Ltd. v. Confezioni Semeraro Paolo,* *S.R.L.*, 264 F.3d 32, 37 (2d Cir.2001) (citation omitted). Here, the constitutional inquiry is unnecessary since the Court finds that New York's long-arm statutes does not authorize the exercise of personal jurisdiction over Tema.

ly sufficient allegations of jurisdiction,' i.e., by making a 'prima facie showing' of jurisdiction." *Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 184 (2d Cir.1998) *quoting Ball v. Metallurgie Hoboken–Overpelt, S.A.*, 902 F.2d 194, 199 (2d Cir.1990) (internal citation omitted); *Landoil Res. Corp. v. Alexander & Alexander Servs., Inc.*, 918 F.2d 1039, 1043 (2d Cir.1990); *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 57 (2d Cir.1985). In reviewing a motion to dismiss, the Court assumes that plaintiff's factual allegations are true, construes pleadings and affidavits in the light most favorable to plaintiff and similarly resolves any doubts raised in favor of the plaintiff. *See A.I. Trade Fin., Inc. v. Petra Bank*, 989 F.2d 76, 79–80 (2d Cir.1993); *Hoffritz*, 763 F.2d at 57.

3. *New York Civil Practice Law and Rules § 302(a)(1)*

Under CPLR § 302(a), New York's long-arm statute,

> a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent:
>
> 1. transacts any business within the state or contracts anywhere to supply goods or services in the state....

N.Y. Civ. Prac. L. & R. § 302(a). The statute authorizes personal jurisdiction over non-domiciliaries when the "cause of action aris[es] from" the "[a]cts which are the basis of jurisdiction." *Id.*

■ To establish personal jurisdiction under this provision, the plaintiff must demonstrate that the defendant engaged in a purposeful business transaction in or directed to New York and that such contacts with the state had a "substantial relationship" to the claim asserted in the underlying litigation. *Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 103 (2d Cir.2006) ("To establish personal

jurisdiction under section 302(a)(1), two requirements must be met: (1) The defendant must have transacted business within the state; and (2) the claim asserted must arise from that business activity.") *citing McGowan v. Smith,* 52 N.Y.2d .268, 437 N.Y.S.2d 643, 419 N.E.2d 321, 323 (1981); *see also CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir.1986) ("A nondomiciliary 'transacts business' under CPLR 302(a)(1) when he 'purposefully avails [himself] of the privilege of conducting activities within [New York], thus invoking the benefits and protections of its laws.'") (*quoting McKee Elec. Co. v. Rauland–Borg Corp.*, 20 N.Y.2d 377, 283 N.Y.S.2d 34, 229 N.E.2d 604, 607 (1967)); *Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 527 N.Y.S.2d 195, 522 N.E.2d 40, 43 (1988) (Personal jurisdiction under CPLR 302(a)(1) is appropriate only when "the defendant's activities [in New York] were purposeful and there is a substantial relationship between the transaction and the claim asserted."); *McGowan*, 437 N.Y.S.2d 643, 419 N.E.2d at 323 (requiring a showing under CPLR § 302(a)(1) of "the existence of some articulable nexus between the business transacted and the cause of action sued upon.").

■ In determining whether personal jurisdiction is appropriate under CPLR § 302(a), a court must consider all of the party's relevant contacts with New York in the aggregate, or in their totality. *See CutCo Indus., Inc.*, 806 F.2d at 365 ("No single event or contact connecting defendant to the forum need be demonstrated; rather, the totality of all defendant's contacts with the forum must indicate that the exercise of jurisdiction would be proper.") (citations omitted)

■ In summarizing the factors that should be considered in determining whether a defendant has transacted busi-

ness in New York within the meaning of CPLR § 302(a)(1) the Second Circuit stated that:

> The question of whether an out-of-state defendant transacts business in New York is determined by considering a variety of factors, including: (i) whether the defendant has on-going contractual relationship with a New York corporation, (ii) whether the contract was negotiated or executed in New York, and whether, after executing a contract with a New York business, the defendant has visited New York for the purpose of meeting with parties to the contract regarding the relationship, (iii) what the choice-of-law clause is in any such contract, and (iv) whether the contract requires [defendant] to send notices and payments into the forum state or subjects them to supervision by the corporation in the forum state. Although all are relevant, no one factor is dispositive. Other factors may also be considered, and the ultimate determination is based on the totality of the circumstances.

*Agency Rent A Car Sys. v. Grand Rent A Car Corp.*, 98 F.3d 25, 29 (2d Cir.1996) (citations omitted).

 In this case, under the first three factors of the *Agency Rent A Car* analysis, while the IUA does appear to create an on-going contractual relationship between the parties, the contract was not negotiated or executed in New York, and it does not contain any choice-of-law provision.

Barrett acknowledges that the IUA was drafted in London after he met with Khoury there. (*See* Barrett Decl. ¶ 3).[6]

Barrett does contend that after the IUA was allegedly agreed to, he "had a conversation with Mr. Khoury in person in New York, New York concerning the [IUA], and potential real estate investments made pursuant thereto." (Barrett Decl. ¶ 13.) But the allegation does not indicate that the purpose of Khoury's presence in New York was to meet with Barrett regarding their relationship.[7] Moreover, "a single meeting in New York will rarely provide the basis for jurisdiction pursuant to § 302(a)(1), especially when that meeting does not result in the execution of a contract." *Cooper, Robertson & Partners, LLP v. Vail*, 143 F.Supp.2d 367, (S.D.N.Y. 2001); *cf. Hoffritz*, 763 F.2d at 61 (where defendant visited New York numerous times for the "purpose of conducting franchise related activity," the "New York Court of Appeals' concern . . . that 'every corporation whose officers . . . happen to pass the time of day with a New York customer in New York [would run] the risk of being subjected to the personal jurisdiction of New York courts,' was not implicated.") *citing McKee Elec.*, 283 N.Y.S.2d 34, 229 N.E.2d at 604.

With regard to Barrett's claim for breach of contract, for purposes of CPLR § 302(a)(1), a breach of contract claim arises from facts related to the formation, performance, or breach of a contract. *See*

---

6. The parties have brought to the Court's attention that Barrett recently argued in the related state court action that the IUA "is governed by English law" because "its terms were negotiated in London and accepted by Khoury in London". (*Barrett v. Torovan*, No. 112012/04 (N.Y.Sup.Ct. Oct. 24, 2006) at 4, attached to Letter to Honorable Victor Marrero from David J. Hoffman, dated Oct. 31, 2006.) The New York Supreme Court did not agree, however, that the contract was governed by English law. (*Id.* at 6 ("Plaintiff's

contention that the [IUA] is governed by English law is contrived and belied by the papers before the court.")).

7. Khoury explicitly states that he "came to New York . . . to visit his uncle, who was very ill, and not to meet with Barrett." (Defendant's Memorandum of Law in Support of its Motion to Dismiss the Complaint, dated Mar. 7, 2006 ("Def.'s Memo"), at 15.)

*Agency Rent A Car*, 98 F.3d at 31 ("Two elements give rise to a breach of contract claim: (i) a contract between the parties and (ii) an act allegedly in violation of that agreement. Both are necessary elements of the claim; neither is sufficient by itself."); CPLR § 302(a)(1) (providing for jurisdiction if the party "contracts anywhere to supply goods or services in the state"); *CutCo Indus., Inc.*, 806 F.2d at 368 (stating that contractual provisions requiring a non-domiciliary to send notices and payments into the forum state "are relevant for jurisdictional purposes."). Analogously, a claim for breach of fiduciary duty would arise from facts related to the elements of the claim—the existence of a fiduciary duty between the parties and the breach of that duty—or to facts concerning the defendant's performance of its fiduciary duty.

Neither the formation of. the IUA, as discussed above, nor its substantial performance or breach took place in New York. Barrett references numerous telephone calls and e-mails with Tema concerning the IUA and proposed real estate investment under the IUA. Telephone calls and other communications across state lines can serve as the basis for personal jurisdiction even when the defendant never enters the state. *Kreutter*, 527 N.Y.S.2d 195, 522 N.E.2d at 43 (CPLR 301(a)(1) authorizes jurisdiction "even though defendant never enters New York, so long as the defendant's activities here were purposeful....").

However, no New York cases have been brought to the Court's attention where jurisdiction was based primarily on communications between the parties unless those communications were an integral part of a transaction directed at New York. *Compare Maranga v. Vira*, 386 F.Supp.2d 299, 306 (S.D.N.Y.2005) (declining to exercise personal jurisdiction over a defendant who negotiated a contract for the sale of a motel in Louisiana with a New York resident primarily through telephone calls, faxes, and the mail) and *J.L.B. Equities, Inc. v. Ocwen Financial Corp.*, 131 F.Supp.2d 544, 551 (S.D.N.Y.2001)("a series of frequent telephone calls and telecopies and the one meeting during which a modification of the agreement was memorialized ... are insufficient to meet the 'transacting business' standard."), *with Parke–Bernet Galleries, Inc. v. Franklyn*, 26 N.Y.2d 13, 308 N.Y.S.2d 337, 256 N.E.2d 506, 508 (1970) (exercising jurisdiction over a defendant who "projected himself into the auction room [via telephone] in order to compete with the other prospective purchasers" who were actually present), and *Deutsche Bank Securities, Inc. v. Montana Bd. of Investments*, 7 N.Y.3d 65, 818 N.Y.S.2d 164, 850 N.E.2d 1140, 1143 (2006) (exercising jurisdiction over a "sophisticated institutional trader that entered into New York to transact business here by knowingly initiating and pursuing a negotiation with a [Deutsche Bank] employee in New York that culminated in the sale of $15 million in bonds."). As the court stated in *Maranga*, "communications into New York will only be sufficient to establish personal jurisdiction if they were related to some transaction that had its center of gravity inside New York, into which a defendant projected himself." 386 F.Supp.2d at 306 (internal citations omitted).

The Court does not find sufficient ground to support a determination that Barrett's communication with Tema evidences Tema's purposefully projecting itself into New York. Moreover, as discussed further below, the center of gravity of the parties' transaction was not New York.

Barrett emphasizes Tema's relationship with Bank Audi, which is located in New

York. The IUA does indicate that Tema will "request that Bank Audi take phone calls from prospective Sellers and indicate that Tema and/or its affiliates have sufficient capital in the bank to close a transaction." (IUA ¶ 6.) But the only communication this provision calls for Tema to perform is a request for Bank Audi to respond to inquiries. This undertaking is a relatively minor part of Tema's duties under the agreement and it is not alleged that Tema actually made that communication or that Bank Audi ever had to actually perform the specified duty. *Cf. CutCo Indus., Inc.*, 806 F.2d at 364, 368 (prima facie showing of jurisdiction made where, among other contacts, contract required defendant to "regularly forward[ ] royalties, fees, and reports to plaintiff in New York" and to have "continuous contact with [plaintiff's] New York office."). It is apparent from the IUA that Tema's most fundamental and significant duties are to "fund contract deposits for approved deals" (IUA ¶ 2) and to pay Barrett certain fees based on the properties acquired through Barrett's efforts (IUA ¶ 3). It is possible that Tema planned to perform these duties using its accounts in New York with Bank Audi but the IUA does not require it to do so, and Barrett does not allege that the parties intended for Tema to use its New York accounts with Bank Audi as an integral and regular aspect of the parties' transaction to fulfill

Tema's primary contractual duties. Tema and Khoury's business dealings with Bank Audi, beyond those related to the performance of the IUA discussed above, are otherwise irrelevant to the issue of personal jurisdiction in this case because they are entirely unrelated to the transaction which gave rise to these claims.[8]

While Barrett alleges the IUA resulted in proposed real estate investments in Massachusetts, Virginia and Florida, he does not identify any investments contemplated in New York. The IUA apparently contemplated real estate transactions over a wide geographic area which could have included New York, but the possibility that the contract could have included investments in New York is too speculative to constitute the type of purposeful business activity directed at New York that is encompassed by CPLR § 302(a)(1). *Cf. Ventura Assoc., Inc. v. International Outsourcing Services*, No. 04 Civ. 5962, 2005 WL 1634002, *4 (S.D.N.Y. July 12, 2005) (finding personal jurisdiction appropriate over a breach of contract claim based on an "agreement provid[ing] that [the defendant] would render services in all fifty states, including New York" where plaintiff also alleged that the agreement was "drafted, negotiated, and agreed upon in New York.") (internal quotations omitted).

As for the alleged Barrett/Tema partnership's retention of a New York law firm and Tema's payment of the firm's bill,[9]

---

8. Barrett does not assert that jurisdiction lies under CPLR § 301, which provides a basis for jurisdiction where a foreign corporation is generally "doing business" in New York. *See Hoffritz*, 763 F.2d at 58. "The showing necessary for a finding that defendant has 'transacted business' and is suable on a cause of action arising from that transaction is considerably less than that needed to establish defendant's 'doing business,' which renders the defendant subject to suit on even an unrelated cause of action." *Id.* Presumably, Barrett does not assert that Tema is "doing business" in New York because it is clear Barrett cannot

make the necessary showing. An active bank account in New York does not constitute "doing business." *See National Sun Indus. v. Dakahlia Commer. Bank*, 113 F.3d 1229 (2d Cir.1997) ("Although substantial funds were deposited and withdrawn in [defendant's] account, we cannot conclude that the maintenance of that account constituted 'doing business' in New York.")

9. Tema argues that the law firm was actually retained by Barrett to represent his interests, and provides the Court legal bills from Paul Hastings indicating that the firm was repre-

these acts do not show that Tema "purposefully availed itself of the privilege of conducting activities within [the state of New York]." *McKee Elec. Co.*, 283 N.Y.S.2d 34, 229 N.E.2d at 607. Significantly, Barrett states that "*I retained*" the law firm, not Tema. (Barrett Decl. ¶ 12) (emphasis added) The "focus of a C.P.L.R. § 302 inquiry is on what defendant [Tema] did in New York in connection with the cause of action." *PaineWebber Inc. v. Westgate Group, Inc.*, 748 F.Supp. 115, 119 (S.D.N.Y.1990). Further, the compliant alleges that the law firm was assisting Barrett and Tema in negotiations with the seller of Great Woods, an investment property located in Massachusetts. Whatever contact there may have been between Tema and the New York law firm was "not designed to permit [Defendant] to conduct activity in New York," *id.;* if anything, it was designed to permit Tema to transact business in Massachusetts. Moreover, Barrett's breach of contract and fiduciary duty claims arise out of the parties' IUA, not out of other agreements with third parties allegedly drafted by the New York law firm. *See J.L.B. Equities*, 131 F.Supp.2d at 551.

Considering all of the facts and circumstances in their totality, the Court is not persuaded that exercising personal jurisdiction over Tema in this case is authorized by CPLR 302(a)(1). At most, Tema entered into a contract (the IUA) with a New York resident under which the only New York contacts that have any connections with that transaction are a single meeting in New York between the parties where the IUA was discussed, a New York bank account referenced in the IUA, and the use of a New York law firm in connec-

tion with negotiating an investment deal outside of New York that allegedly arose out of the IUA. Tema's connections with New York through the IUA are considerably more "fortuitous" and "random" than they are purposefully directed at New York as required for jurisdiction under CPLR 302(a)(1). *Beatie & Osborn LLP v. Patriot Scientific Corp.*, 431 F.Supp.2d 367, 387 (S.D.N.Y.2006). Exercising personal jurisdiction over Tema in this case would essentially expand the reach of CPLR § 302(a)(1) beyond persons who regularly and purposely transact business in New York to encompass those who merely enter into an isolated business relationship outside of New York with a resident of New York.

Accordingly, the Court concludes that there is an insufficient basis for its exercise of personal jurisdiction over Tema in this case.

### III. *ORDER*

For the reasons discussed above, it is hereby

**ORDERED** that the motion of defendant Tema Development (1988), Inc. to dismiss this action (Docket No. 5) for lack of personal jurisdiction is GRANTED.

The Clerk of Court is directed to close this case.

**SO ORDERED:**

---

senting Barrett and his company, Capstone Realty Partners, in drafting an operating agreement with Tema. Nevertheless, "when presented with competing affidavits at the motion to dismiss stage, the Court must re-solve all doubts in plaintiff's favor, notwithstanding a countervailing presentation by defendant." *Ventura Assoc.*, 2005 WL 1634002 at *4.