**Reversed and Remanded and Majority and Dissenting Opinions filed November 19, 2013.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-12-00821-CV

---

### CALABRIAN CORPORATION, Appellant

### V.

### ALLIANCE SPECIALTY CHEMICALS, INC., Appellee

---

**On Appeal from the 165th District Court
Harris County, Texas
Trial Court Cause No. 2011-71011**

---

## DISSENTING OPINION

This court holds that the trial court erred by granting a non-resident defendant's special appearance because the non-resident defendant is collaterally estopped from relitigating personal jurisdiction. The majority grounds its holding

upon a federal district court's personal-jurisdiction ruling in a 1998 lawsuit involving different claims. The trial court did not err because (1) the plaintiff did not present sufficient evidence to meet its burden of establishing that collateral estoppel applies; and (2) the personal-jurisdiction issue actually litigated in the 1998 lawsuit is not identical to the personal-jurisdiction issue in today's case. Instead of reversing and remanding based on collateral estoppel, this court should affirm the trial court's order granting the non-resident defendant's special appearance.

### FACTUAL AND PROCEDURAL BACKGROUND

In 1998, appellant/plaintiff Calabrian Corporation sued appellee/defendant Alliance Specialty Chemicals, Inc.[1] in the 60th Judicial District Court of Jefferson County, Texas ("the 1998 Case"). After the 1998 Case was removed to federal court, Alliance filed a motion contesting personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), which the federal district court denied.

More than eleven years later, in November 2011, Calabrian filed a lawsuit in the 165th Judicial District Court of Harris County, Texas ("the 2011 Case") against Alliance and Olin Corporation. Calabrian later added a third defendant, Chemtrade Logistics (US), Inc. In its live petition in the 2011 Case, Calabrian made the following allegations:

- Olin is a Virginia corporation with its principal place of business in Missouri.
- Chemtrade is a Delaware corporation with its principal place of business in Ohio.

---

[1] Alliance has judicially admitted that it was previously known as RFC $CO_2$ and that its name was changed from RFC $CO_2$, Inc. to Alliance. In this opinion RFC $CO_2$, Inc. and Alliance Specialty Chemicals, Inc. are both referred to as "Alliance."

- In its contract with Olin, Noxso Corporation agreed to relinquish any rights or ownership in the Plant ten years after the construction of the sulfur dioxide plant in Tennessee (the "Plant") was complete.

- Under the License Agreement between Noxso and Calabrian, Noxso was allowed to use Calabrian's sulfur dioxide technology in constructing the Plant.

- The License Agreement contained strict confidentiality provisions limiting Noxso's use of Calabrian's sulfur dioxide technology and restricting access to Calabrian's proprietary and trade secret information.

- The License Agreement granted Noxso a ten-year license to use Calabrian's sulfur dioxide technology.

- The License Agreement was assigned to Alliance.

- In assuming the License Agreement, Alliance was obligated to adhere to all the terms of this agreement including the confidentiality provisions and the obligation to transfer the Plant to Olin.

- In 2009, Chemtrade bought the shares of Alliance. Chemtrade is Calabrian's primary competitor in the liquid sulfur dioxide market.

- By virtue of its acquisition of Alliance's shares, Chemtrade obtained access to Calabrian's confidential, trade secret information and is now in a position to use that information to compete directly with Calabrian in the liquid sulfur dioxide market.

- Chemtrade wrongfully gained access to Calabrian's confidential information before Chemtrade's acquisition of Alliance. Alliance violated the License Agreement by disclosing Calabrian's confidential information to Chemtrade. Chemtrade continues to have access to Calabrian's sulfur dioxide technology and other confidential information in violation of the License Agreement.

- Alliance continues to own and operate the Plant and continues to use the Calabrian sulfur dioxide technology to produce liquid sulfur dioxide in violation of the License Agreement. Calabrian reminded Alliance and Olin of their contractual obligations to transfer ownership of the Plant and to cease using the Calabrian sulfur dioxide technology, but Olin and Alliance have rejected any obligation to transfer the Plant as required by the agreements in question. Olin and

Alliance wrongfully have asserted that the License Agreement does not terminate, but instead runs as long as the Plant is in existence.

Based upon these allegations, Calabrian asserts claims against Alliance for (1) declaratory judgment, (2) breach of the License Agreement, and (3) misappropriation of trade secrets, seeking actual damages, exemplary damages, attorney's fees, and permanent injunctive relief. Calabrian seeks a declaratory judgment that the license granted by the License Agreement is not perpetual, as claimed by Alliance and Olin, but instead already has terminated. Calabrian asserts that Alliance has breached the License Agreement to the extent it has refused to honor its commitment under the agreement to transfer ownership of the Plant to Olin. According to Calabrian, Alliance has repudiated this obligation and has made it clear that it does not intend to transfer the Plant, and this repudiation constitutes a material breach of the License Agreement. Calabrian also claims that Alliance breached and continues to breach the License Agreement by its continued use of Calabrian's sulfur-dioxide technology. Calabrian further asserts that Alliance has breached the confidentiality and non-disclosure provisions of the License Agreement by disclosing Calabrian's technical information and trade secrets to Chemtrade. Calabrian claims that Alliance's alleged breaches constitute material breaches of the License Agreement that entitle Calabrian to terminate that contract. Calabrian alleges that Alliance misappropriated Calabrian's sulfur-dioxide technology by wrongfully disclosing it to third parties, including Chemtrade. According to Calabrian, Alliance's continued use of this technology, despite the expiration of the License Agreement, amounts to misappropriation of Calabrian's trade secrets and confidential information. Calabrian asserts that the trial court may exercise personal jurisdiction over Alliance based upon specific jurisdiction; Calabrian does not assert general jurisdiction.

4

Alliance filed a special appearance asserting that the exercise of personal jurisdiction over Alliance by a Texas court would violate due process because Alliance lacks sufficient minimum contacts with Texas and because the exercise of personal jurisdiction would violate traditional notions of fair play and substantial justice. Calabrian opposed the special appearance, arguing that (1) collateral estoppel bars Alliance from urging that the trial court cannot exercise personal jurisdiction over Alliance because this issue was determined against Alliance in the 1998 Case, (2) Alliance has sufficient minimum contacts with Texas to establish specific jurisdiction; and (3) the exercise of personal jurisdiction would not violate traditional notions of fair play and substantial justice. The trial court granted Alliance's special appearance. In this interlocutory appeal, Calabrian challenges the trial court court's order.

**To apply collateral estoppel, this court must conclude that the record evidence is sufficient to establish all the elements necessary for application of this defense.**

Collateral estoppel is an affirmative defense and, therefore, the party asserting it has the burden of pleading and proving all of the elements necessary for the doctrine to apply.[2] To prevail on its collateral-estoppel defense, Calabrian had to establish that (1) the issue sought to be litigated in the 2011 Case is identical to an issue that was fully and fairly litigated in the 1998 Case; (2) this issue was essential to the judgment in the 1998 Case, and that judgment was adequately deliberated and firm; and (3) the parties were cast as adversaries in the 1998 Case.[3]

---

[2] *See Mallios v. Standard Ins. Co*., 237 S.W.3d 778, 780 (Tex. App.—Houston [14th Dist.] 2007, pet. denied); *Hudson v. City of Houston*, No. 14-03-00565-CV, 2005 WL 3995160, at \*4 (Tex. App.—Houston [14th Dist.] Jan. 6, 2005, no pet.) (mem. op.).

[3] *See Mower v. Boyer*, 811 S.W.2d 560, 562 (Tex. 1991); *Van Dyke v. Boswell, O'Toole, Davis & Pickering*, 697 S.W.2d 381, 384 (Tex. 1985); *Upjohn Co. v. Freeman*, 906 S.W.2d 92, 101–02 (Tex. App.—Dallas 1995, no writ).

The factors to be considered in determining whether the trial court's judgment in the 1998 Case was adequately deliberated and firm are: (1) whether the parties were fully heard, (2) whether the court supported its decision with a reasoned opinion, and (3) whether the decision was subject to appeal or in fact was reviewed on appeal.[4]

Some courts reciting the elements necessary to prove collateral estoppel fail to mention any requirement that the judgment be adequately deliberated and firm or that the judgment be a "final" one.[5] Nonetheless, the Supreme Court of Texas has held that "[a] prior adjudication of an issue will be given estoppel effect *only* if it was adequately deliberated and firm."[6] Thus, this element is essential and must be included in a complete statement of the essential elements of collateral estoppel. Likewise, in some cases, courts state that collateral estoppel requires a "final judgment." But, this statement is not accurate unless by "final judgment" these courts mean a "judgment that was adequately deliberated and firm."[7] Because readers might not attach the latter meaning to the term "final judgment," for clarity and precision, it is better to use the term "an adequately deliberated and firm judgment" when reciting the essential elements of collateral estoppel.[8]

By its ruling, the trial court impliedly determined that the evidence before it did not establish all of the essential elements of collateral estoppel. And, by

---

[4] *See Mower*, 811 S.W.2d at 562; *Van Dyke*, 697 S.W.2d at 385.

[5] *See, e.g., Eagle Properties, Ltd. v. Sharbauer*, 807 S.W.2d 714, 721 (Tex. 1990) (reciting three elements a party must establish to invoke collateral estoppel, without mentioning an adequately deliberated and firm judgment).

[6] *Mower*, 811 S.W.2d at 562 (emphasis added).

[7] *See Mower*, 811 S.W.2d at 562; *Van Dyke*, 697 S.W.2d at 385.

[8] *Mower*, 811 S.W.2d at 562.

concluding that the trial court erred, the majority necessarily has determined that the evidence before the trial court establishes all of these elements. The record evidence does not support the majority's determination.

**Calabrian has not presented evidence sufficient to establish all the elements necessary for application of the collateral-estoppel defense.**

Calabrian, as the party asserting collateral estoppel, had the burden of presenting evidence of the proceedings in the 1998 Case sufficient to establish all of the necessary elements of this affirmative defense.[9] The record before the trial court contains the following documents from the 1998 Case: (1) Calabrian's original petition filed in the state court, (2) Calabrian's response in opposition to Alliance's Rule 12(b)(2) motion, (3) the federal district court's order denying Alliance's Rule 12(b)(2) motion, and (4) the federal district court's order denying Alliance's motion for reconsideration of the denial of its Rule 12(b)(2) motion, subject to its reurging after further briefing by the parties. Absent from the record is the Rule 12(b)(2) motion filed by Alliance and Alliance's motion for reconsideration. Significantly, the record does not contain any document filed by Alliance, nor does it contain any judgment signed in the 1998 Case. These are fatal omissions.

In its order denying Alliance's Rule 12(b)(2) motion, the federal district court does not recite the reasons why it denied this motion, but the court does state that it denied the motion based upon the findings of fact and conclusions of law that it made at a hearing on July 24, 1998. Calabrian has not supplied and the record does not contain these findings of fact and conclusions of law or a reporter's

---

[9] *See Hudson*, 2005 WL 3995160, at *4; *Cuellar v. City of San Antonio*, 821 S.W.2d 250, 256 (Tex. App.—San Antonio 1991, writ denied).

record from that hearing or any other hearing in the 1998 Case. In its order on Alliance's motion for reconsideration, the federal district court makes the following statements:

(1) the dispute between the parties centered around a related case pending in the United States Bankruptcy Court for the Eastern District of Tennessee;

(2) on December 22, 1998, the bankruptcy court in that case issued an order analyzing the various lawsuits arising out of this dispute;

(3) the parties in the 1998 Case had not briefed the district court in the 1998 Case as to the effect this order had on the 1998 Case;

(4) accordingly, the district court denied Alliance's motion for reconsideration subject to its re-urging after further briefing by the parties; and

(5) the district court ordered further briefing by the parties as to the effect of the bankruptcy court's order on the 1998 Case.

The record documents Calabrian submitted from the 1998 Case do not reflect whether Alliance re-urged its motion for reconsideration after this additional briefing or whether the trial court reconsidered its ruling on Alliance's Rule 12(b)(2) motion or, most importantly, the terms of the federal district court's judgment in the 1998 Case.

Without the motions that the federal district court denied, that court's findings of fact and conclusions of law, or that court's final judgment, this court lacks sufficient evidence to determine (1) whether the personal-jurisdiction issue in the 2011 Case is identical to an issue that was fully and fairly litigated in the 1998 Case, (2) whether the parties were fully heard by the federal district court on the jurisdictional issue, (3) whether the federal district court supported its decision with a reasoned opinion, or (4) whether the federal district court's decision was

8

subject to appeal or, in fact, was reviewed on appeal. *Did the district court deny the Rule 12(b)(2) motion because it was untimely*? We do not know. *Did Alliance re-urge its motion for reconsideration*? We do not know. *Did the district court rule on this re-urged motion*? We do not know. *Did the district court render its final judgment in 2000 following a settlement of the 1998 Case, so that the district court's ruling on the motion was not subject to appeal*? We do not know. The record before the trial court is not sufficient to answer these crucial questions.

Collateral estoppel requires proof that an issue was actually and necessarily decided as part of a valid judgment that was adequately deliberated and firm. It is not established by showing mere possibilities. Nor is it established by offering select filings from the prior case that do not address, much less meet, the threshold standard of proof. This court ought not give preclusive effect to a judgment it has never seen.

The affidavit of Calabrian's President contains a statement that "The Eastern District of Texas entered final judgment in the case in March of 2000." To the extent the President addressed the nature of the judgment entered, this statement is a conclusory statement of law. Calabrian recited this statement in the statement-of-facts section of its appellate brief. Alliance did not state in its appellate brief that there was a final judgment, but Alliance did not contradict Calabrian's statement that there was a final judgment. The majority concludes that this court must accept this statement as true under Texas Rule of Appellate Procedure 38.1(g).[10] But, under the unambiguous language of this rule, this court must accept as true only "facts stated" by the appellant, unless another party contradicts them.[11] Because

---

[10] *See* Tex. R. App. P. 38.1(g).

[11] *Id.*

9

this statement is a conclusory statement of law, it is not a statement of fact subject to the rule. And, crucially, the statement provides no evidence on the issue of whether the district court rendered either a final judgment or an adequately deliberated and firm judgment.[12]

The majority cannot reach its conclusion without speculating about what transpired in the 1998 Case. Our record is devoid of documents necessary to make that determination. In the absence of the requisite proof, the trial court was correct to reject Calabrian's affirmative defense. This court likewise should conclude that Calabrian did not present evidence of the proceedings in the 1998 Case sufficient to establish all of the necessary elements of collateral estoppel.[13]

**Calabrian has not established that the personal-jurisdiction issue actually litigated in the 1998 Case is identical to the personal-jurisdiction issue in the 2011 Case.**

Under the majority's analysis, even if the record supports the trial court's implied finding that Alliance did not have sufficient minimum contacts with Texas to support the exercise of personal jurisdiction over Alliance based on specific jurisdiction, Alliance is precluded from challenging personal jurisdiction under the doctrine of collateral estoppel. The majority finds merit in Calabrian's argument that, under this doctrine, Alliance is estopped from seeking dismissal of the Calabrian's claims for lack of personal jurisdiction in the 2011 Case because the federal district court in the 1998 Case decided that Alliance was subject to personal jurisdiction in Texas when the court denied Alliance's Rule 12(b)(2) motion and its

---

[12] *See id.*; *Coastal Transp. Co., Inc. v. Crown Cent. Petroleum Corp.*, 136 S.W.3d 227, 233 (Tex. 2004) (stating that conclusory statements constitute no evidence).

[13] *See Hudson*, 2005 WL 3995160, at *4; *Cuellar*, 821 S.W.2d at 256. *See also In re Castaneda*, 81 B.R. 470, 472–73 (N.D. Ill. Bankr. 1988) (concluding that party asserting collateral estoppel failed to submit evidence of the proceedings in the first action sufficient to establish all of the necessary elements of collateral estoppel).

motion for reconsideration of the denial of that motion. These rulings were made by a judge of the United States District Court for the Eastern District of Texas, Beaumont Division. For the sake of argument, it is presumed in the analysis in this section of the opinion that: (1) the record evidence is sufficient for this court to determine the collateral-estoppel issue; (2) Calabrian and Alliance were cast as adversaries in the 1998 Case; and (3) the judgment in the 1998 Case was adequately deliberated and firm.

In its original petition in the 1998 Case, Calabrian made the following allegations:

- Plaintiff Calabrian is a Delaware corporation with its principal place of business in Jefferson County, Texas.

- Defendant Republic is a Colorado corporation with its principal place of business in Colorado.

- Defendant Alliance is a Wyoming corporation with its principal place of business in Colorado.

- Calabrian and Noxso entered into the License Agreement in connection with a Purchase Agreement dated October 16, 1995 ("Purchase Agreement").

- The License Agreement, the Purchase Agreement, and the subject matter thereof have been and continue to be the subject of litigation between Calabrian and Noxso. In August 1996, Calabrian sued Noxso in Jefferson County district court alleging breach of the Purchase Agreement and of the License Agreement. This case was removed to federal court and was still pending in February 1998.

- Thereafter, Noxso became a subject of an involuntary bankruptcy proceeding in February 1997. In the bankruptcy proceeding, the Plant was sold to Republic, and the License Agreement was assigned to Republic or Alliance.

- Calabrian filed an objection in the bankruptcy proceeding to the sale of the Plant and the assignment of the License Agreement, but Calabrian later withdrew its objection pursuant to a settlement agreement between Calabrian and Noxso.

- When the 1998 Case was filed there was a dispute between Calabrian and Noxso as to whether Noxso was bound by this settlement agreement, and Calabrian had filed a motion in its lawsuit against Noxso to enforce the settlement agreement.

- A justiciable controversy existed between the parties regarding the parties' respective rights, duties and obligations under and in connection with the License Agreement.

In the 1998 Case, Calabrian sought declaratory relief regarding the rights of the parties under the License Agreement, including declarations as to the following issues:

(1) How many tons of product may be produced each year pursuant to the License Agreement?

(2) What types of derivative products may be produced at the Plant?

(3) To whom may products produced at the Plant be sold?

(4) Does Republic or Alliance have the right to relocate the Plant?

(5) To what extent may Republic or Alliance make improvements or modifications to the Plant?

(6) What disclosure obligations exist on Republic and Alliance in connection with the Plant, changes and modifications to the Plant, and production at the Plant?

(7) What obligations exist on Republic and Alliance to allow Calabrian access to the Plant?

(8) What confidentiality obligations exist on Republic and Alliance?

(9) What payment obligations exist to Calabrian under or in connection with the License Agreement?

(10) What access rights does Calabrian have to the Plant?

In its original petition, Calabrian did not allege that Republic or Alliance breached any contract or committed any tort; rather, Calabrian requested injunctive relief and money damages in the event it was determined that Republic or Alliance had violated or intended to violate the License Agreement.

Both the 1998 Case and the 2011 Case involve the License Agreement, Calabrian as the plaintiff, and Alliance as one of the defendants. Nonetheless, the record shows that none of the claims Calabrian asserts in the 2011 Case were asserted by Calabrian in the 1998 Case. The 1998 Case involves claims for declaratory relief and conditional claims for breach of contract. Any such breach of contract could not have been committed after 2000. In the 2011 Case, Calabrian asserts claims against Alliance for declaratory judgment, breach of the License Agreement, and misappropriation of trade secrets. The focus of these claims is on Calabrian's contention that Alliance was required to transfer ownership of the Plant to Olin ten years after construction of the Plant, that the License Agreement terminated after ten years, and that Alliance disclosed confidential information, its proprietary technical information, and trade secrets to Chemtrade. Based upon the allegations in the 2011 Case, the alleged termination of the License Agreement could not have occurred earlier than in September 2005, long after the conclusion of the 1998 Case. And, the alleged disclosure of confidential information and trade secrets to Chemtrade began in 2009. None of the allegedly actionable conduct in the 2011 Case was made the basis of the 1998 Case.

13

The record reflects that Calabrian did not assert general jurisdiction in the 1998 Case. Thus, in denying Alliance's motion to dismiss for lack of personal jurisdiction in the 1998 Case, the district court impliedly found that (1) Calabrian's claims in the 1998 Case arose from or related to Alliance's contacts with Texas and (2) the exercise of jurisdiction over Alliance in the 1998 Case did not offend traditional notions of fair play and substantial justice.[14] This finding was based on Alliance's contacts with Texas through 1998 and the relationship of these contacts to Calabrian's claims in the 1998 Case. Thirteen years later, in the 2011 Case, Calabrian is asserting different claims, and the jurisdictional analysis of Alliance's contacts with Texas takes place at a much later point in time. Thus, critically, the personal-jurisdiction issue actually litigated in the first action is not identical to the personal-jurisdiction issue in the second action.[15] Therefore, the doctrine of collateral estoppel does not bar Alliance from challenging personal jurisdiction in the 2011 Case.[16]

The majority concludes that the issue determined in the 1998 Case was whether Alliance was subject to personal jurisdiction in Texas and therefore this issue is identical to the personal jurisdiction issue in the 2011 Case. But, as

---

[14] *See Ruston Gas Turbines, Inc. v. Donaldson Co., Inc.*, 9 F.3d 415, 418–19 (5th Cir. 1993).

[15] *See John G and Marie Stella Kenedy Mem'l Found. v. Dewhurst*, 90 S.W.3d 268, 288–89 (Tex. 2002) (holding that collateral estoppel did not apply because issue litigated in first action was not identical to the issue in the second action); *In re H.E. Butt Grocery Co.*, 17 S.W.3d 360, 377 (Tex. App.—Houston [14th Dist.] 2000, orig. proceeding) (same as *John G. & Marie Stella Kenedy Mem'l Found.*); *Barrett v. Tema Development (1988), Inc.*, 463 F.Supp.2d 423, 427–28 (S.D. N.Y. 2006) (holding that collateral estoppel did not preclude litigation of issue of whether trial court could exercise personal jurisdiction over defendant in second action because that issue was not identical to issue of whether trial court could exercise personal jurisdiction over defendant in first action, given that the claims in the two actions were different and the difference in the jurisdictional facts), *aff'd*, 251 Fed. Appx. 698 (2d Cir. 2007).

[16] *See John G. & Marie Stella Kenedy Mem'l Found.*, 90 S.W.3d at 288–89; *In re H.E. Butt Grocery Co.*, 17 S.W.3d at 377; *Barrett*, 463 F.Supp.2d at 427–28.

14

discussed above, the federal district court in the 1998 Case decided whether (1) Calabrian's claims in the 1998 Case arose from or related to Alliance's contacts with Texas and (2) the exercise of jurisdiction over Alliance in the 1998 Case did not offend traditional notions of fair play and substantial justice.[17]  The district court was not asked to decide whether courts in Texas may exercise personal jurisdiction over Alliance as to all claims by any party, as to all claims by Calabrian, or as to all claims regarding the License Agreement.

The majority relies upon *Corea v. Bilek*, a recent case from our sister court in Amarillo.[18]  But, in that case, the second action was filed a week after the defendant's special appearance was granted in the first action, and the claims asserted and jurisdictional facts were the same in both actions.[19]  Thus, the facts of *Corea* are materially different from those in the case under review.  The majority also cites *Fretz v. Reynolds*,[20] a case from the San Antonio court of appeals that is likewise factually distinguishable.  In *Fretz*, the second action was filed three days after the court dismissed the claims against the defendant for lack of personal jurisdiction in the first action, and the plaintiff asserted substantially the same claims in the second action, adding two additional claims that were based on the same nucleus of operative facts.[21]  The other cases the majority cites in support of its analysis also are not on point.[22]  For the foregoing reasons, the trial

---

[17] *See Ruston Gas Turbines, Inc.*, 9 F.3d at 418–19.

[18] *See* 362 S.W.3d 820, 825–26 (Tex. App.—Amarillo 2012, no pet.).

[19] *See id.*

[20] *See* No. 04-03-00854-CV, 2004 WL 2803201, at *1 (Tex. App.—San Antonio Dec. 8, 2004, pet. denied) (mem. op.).

[21] *See id.*

[22] *See, e.g., Deckert v. Wachovia Student Fin. Servs.*, 963 F.2d 816, 818–19 & n.5 (5th Cir. 1992) (involving case in which plaintiff in second action asserted the same claims as in the first action

court did not err by impliedly determining that the personal-jurisdiction issue actually litigated in the first action is not identical to the personal-jurisdiction issue in the second action.[23]

## CONCLUSION

Today the court lowers the bar for a showing of collateral estoppel by applying the doctrine in the absence of evidence of an adequately deliberated and firm judgment and other requisite proof. But, even if there were sufficient record evidence to make a collateral-estoppel determination, there are sound jurisprudential reasons not to apply the doctrine.

The majority's broad construction of the collateral-estoppel effect of the personal-jurisdiction ruling in the 1998 Case imposes a strong disincentive to settle on a nonresident defendant who unsuccessfully objects to personal jurisdiction in a lawsuit involving a long-term contract. Under the majority's analysis, even if the trial court erroneously determines that such a defendant is subject to personal jurisdiction in Texas, that defendant will be subject to personal jurisdiction in Texas in all future lawsuits involving the long-term contract, unless, on appeal, that defendant obtains a reversal of the personal-jurisdiction ruling. But, to appeal this ruling, the defendant cannot settle the lawsuit. If the evidence shows that the essential elements for collateral estoppel were satisfied as to a personal-jurisdiction ruling in a prior lawsuit, then that ruling should preclude the defendant from objecting to personal jurisdiction in a subsequent suit involving the same or

---

and added one additional claim, and plaintiff's factual allegations in the two actions were "exactly the same").

[23] *See John G. & Marie Stella Kenedy Mem'l Found.*, 90 S.W.3d at 288–89; *In re H.E. Butt Grocery Co.*, 17 S.W.3d at 377; *Barrett*, 463 F.Supp.2d at 427–28.

16

substantially similar claims.  But, when substantially different claims are asserted more than a decade later, as in this case, that the new lawsuit involves the same two parties to a long-term contract should not allow the plaintiff to use the doctrine of collateral estoppel to enforce the prior personal-jurisdiction ruling.

Under the applicable standard of review, the record evidence is legally and factually sufficient to support the trial court's implied findings that Alliance did not have sufficient minimum contacts with Texas to support the exercise of personal jurisdiction over Alliance based on specific jurisdiction, that Alliance negated all jurisdictional bases alleged by Calabrian, and that, under the doctrine of collateral estoppel, Alliance is not precluded from challenging personal jurisdiction in the 2011 Case.  The trial court did not abuse its discretion by impliedly denying Calabrian's request for a continuance of the special-appearance hearing to allow Calabrian an opportunity to obtain additional discovery.  Therefore, this court should affirm the trial court's judgment.  Because it does not, I respectfully dissent.

/s/    Kem Thompson Frost
Chief Justice

Panel consists of Chief Justice Frost and Justices Christopher and Busby.  (Busby, J., majority).

17